# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| JAZMIN AGUILAR, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 1:26-cv-00485 |
| SPACE EXPLORATION TECHNOLOGIES CORP., | § § § § | |
| Defendant. | § § § § | |

## DEFENDANT SPACEX'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR NONECONOMIC DAMAGES AND MEMORANDUM OF LAW IN SUPPORT

Defendant Space Exploration Technologies Corp. ("SpaceX"), by and through undersigned counsel, respectfully moves to dismiss Plaintiffs' claims for noneconomic damages in the First Amended Complaint (Dkt. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]

Respectfully submitted,

*/s/ John T. Cox III*
**John T. Cox III**
*Attorney-in-Charge*
Tx. Bar No. 24003722
S.D. Tex. Bar No. 27251
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000

---

[1] When a defendant files a Rule 12 motion, its "time to answer [i]s tolled under Rule 12(a)(4)" even if the motion does not seek dismissal of all claims. *Banik v. Thompson*, 2017 WL 11713709, at *2 (S.D. Tex. Dec. 11, 2017). Accordingly, SpaceX intends to file an answer after this motion is decided. This motion is directed to the First Amended Complaint (Dkt. 23), which superseded the original Complaint (Dkt. 1) addressed in SpaceX's original motion to dismiss (Dkt. 13).

Houston, Texas 77002
Telephone: 346-718-6604
Facsimile: 346-718-6941
tcox@gibsondunn.com

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF THE ISSUES ...................................................................................... 1

II. STANDARD OF REVIEW .............................................................................................. 1

III. SUMMARY OF ARGUMENT ....................................................................................... 2

IV. BACKGROUND ............................................................................................................. 4

V. ARGUMENT................................................................................................................... 7

   A. Texas Law Generally Prohibits Property-Based Noneconomic Damages. ........................ 7

   B. Plaintiffs Fail to Plead an Exception to the General Prohibition on Property-Based
      Noneconomic Damages. ................................................................................................ 9

      1. Plaintiffs Do Not Allege Malicious Misconduct, Ill-Will, or Animus. ........................ 10

      2. Plaintiffs' Trespass Allegations Do Not Support a Claim for Noneconomic Damages.
         ....................................................................................................................... 14

      3. Plaintiffs Do Not Allege Anything Else Warranting Noneconomic Damages for Their
         Property Loss.................................................................................................... 17

   C. Dismissal with Prejudice Is Warranted............................................................................ 19

VI. RELIEF SOUGHT........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aleman v. Abbott*,
No. 3:06-cv-2208-B, 2007 WL 9717304 (N.D. Tex. Sept. 11, 2007) .......................................2

*Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*,
29 F.4th 226 (5th Cir. 2022) .........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................1, 2, 14

*Associated Builders, Inc. v. Ala. Power Co.*,
505 F.2d 97 (5th Cir. 1974) .........................................................................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................1, 14

*Boyles v. Kerr*,
855 S.W.2d 593 (Tex. 1993)........................................................................................7

*Carter v. Target Corp.*,
541 F. App'x 413 (5th Cir. 2013) .................................................................................1

*Cavnar v. Quality Control Parking, Inc.*,
696 S.W.2d 549 (Tex. 1985)........................................................................................18

*City of Garland v. White*,
368 S.W.2d 12 (Tex. Civ. App.—Eastland 1963) ...................................................11

*City of Tyler v. Likes*,
962 S.W.2d 489 (Tex. 1997)...................................1, 2, 3, 7, 8, 9, 10, 13, 17, 18, 19

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
417 S.W.3d 909 (Tex. 2013)...............................................1, 4, 15, 16, 17, 19

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,
130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003).................................13, 14

*Cox v. Helena Chem. Co.*,
630 S.W.3d 234 (Tex. App.—Eastland 2020) .........................................................16

*Freeman v. City of Pasadena*,
744 S.W.2d 923 (Tex. 1988).........................................................................................18

*Helena Chem. Co. v. Cox*,
644 S.W.3d 66 (Tex. 2023)..........................................................................................16

*Lakeside Village Homeowners Ass'n, Inc. v. Belanger*,
545 S.W.3d 15 (Tex. App.—El Paso 2017)................................................15, 16, 17

*Matheny v. Glen Falls Ins. Co.*,
  152 F.3d 348 (5th Cir. 1998) ..................................................................................9

*Murphy v. Moore*,
  No. 2:20-cv-190-Z, 2021 WL 1819698 (N.D. Tex. May 6, 2021) ..........................16

*Pargas of Longview, Inc. v. Jones*,
  573 S.W.2d 571 (Tex. Civ. App.—Texarkana 1978) ...........................................16

*Petco Animal Supplies, Inc. v. Schuster*,
  144 S.W.3d 554 (Tex. App.—Austin 2004) .......................1, 3, 7, 9, 10, 11, 13, 18

*Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*,
  979 S.W.2d 730 (Tex. App.—Houston [14th Dist.] 1998)
  ....................................................................3, 7, 8, 9, 10, 12, 13, 14, 17, 19, 20

*S.H. b/n/f Hart v. Midland Indep. Sch. Dist.*,
  No. 24-cv-00131-DC-RCG, 2025 WL 325270 (W.D. Tex. Jan. 13, 2025)...............2

*Skinner v. Ard*,
  No. 19-66-JWD-EWD, 2020 WL 620790 (M.D. La. Feb. 10, 2020).......................2

*Wilen v. Falkenstein*,
  191 S.W.3d 791 (Tex. App.—Fort Worth 2006).................................................15

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................................19

Fed. R. Evid. 411 ..................................................................................................13

## I.   STATEMENT OF THE ISSUES

Plaintiffs allege that noise, vibrations, and sonic booms from SpaceX's FAA-licensed Starship launches damaged their houses, and they seek mental-anguish damages for the "acoustic trauma inflicted upon their homes." Dkt. 23 ("FAC") ¶¶ 268, 275. They do not allege any personal injury, any special relationship with SpaceX, any ill-will, animus, or desire to harm them personally, or any deliberate and willful trespass. Given these allegations, have Plaintiffs alleged a legally viable basis to support a claim for noneconomic damages? *See, e.g.*, *City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex. 1997) (prohibiting noneconomic damages for property loss); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 562-63 (Tex. App.—Austin 2004, no pet.) (same); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 922 (Tex. 2013) (requiring a deliberate and willful trespass).

## II.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). The Court views well-pleaded facts in the light most favorable to the plaintiff, but "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). Further, the complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the Court should dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Although Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a

1

person's mind may be alleged generally," this governs the manner of pleading only—it does not excuse a plaintiff from alleging facts from which the Court can reasonably infer the requisite intent to state a claim for relief. *See Iqbal*, 556 U.S. at 686-87.

The Court may dismiss a discrete category of damages that is unsupported by law or pleadings. *See, e.g.*, *Aleman v. Abbott*, No. 3:06-cv-2208-B, 2007 WL 9717304, at *3 (N.D. Tex. Sept. 11, 2007) (dismissing claim for exemplary damages barred by Texas and federal law); *Skinner v. Ard*, No. 19-66-JWD-EWD, 2020 WL 620790, at *10, *12 (M.D. La. Feb. 10, 2020) (dismissing category of damages unavailable under Louisiana law); *see also S.H. b/n/f Hart v. Midland Indep. Sch. Dist.*, No. 24-cv-00131-DC-RCG, 2025 WL 325270, at *12 (W.D. Tex. Jan. 13, 2025) (recommending dismissal of mental-anguish damages foreclosed by Supreme Court precedent).

### III. SUMMARY OF ARGUMENT

Plaintiffs allege that noise and vibrations from SpaceX's rocket launches caused unspecified harm to their houses. Plaintiffs seek to recover, among other things, economic *and noneconomic* damages. Texas law forecloses that request. In property-damage cases like this one, Texas law squarely prohibits the award of noneconomic damages in all but a narrow sliver of cases involving an improper motive to harm the plaintiff personally. Plaintiffs come nowhere close to satisfying that exception in their First Amended Complaint ("FAC"), nor could they. This Court should dismiss Plaintiffs' claims for property-based noneconomic damages as unrecoverable under Texas law.

Texas limits noneconomic damages for property loss because such damages are "difficult to predict" and "difficult to verify." *City of Tyler*, 962 S.W.2d at 495. Texas courts have regularly rejected them, including where "plaintiffs' mental anguish arose out of legal injuries involving the

2

home and its contents." *Id.* at 498 (collecting cases). And every Texas appellate court to consider the question has denied noneconomic damages for property loss where, as here, there is no "ill-will, animus, or design to harm the plaintiff personally." *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Petco*, 144 S.W.3d at 562. Under Texas law, property-based noneconomic damages are not the rule—they are the limited and disfavored exception.

Plaintiffs have pleaded themselves squarely within that prohibition. The FAC alleges that Plaintiffs' "mental anguish [was] caused by the severe and repeated acoustic trauma inflicted ***upon their homes***." FAC ¶¶ 268, 275 (emphasis added). Plaintiffs thus expressly allege their anguish arises from damage to structures, not persons, and that is the precise category that *City of Tyler* holds noncompensable. 962 S.W.2d at 497-500 ("emotional distress caused merely by the loss of …things" not compensable).

Nor have Plaintiffs pleaded any exception. "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties," Texas law "permit[s] recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler*, 962 S.W.2d at 496. None of those circumstances are present here. Plaintiffs do not allege that SpaceX targeted them or intended to harm them. FAC ¶¶ 262-68. Instead, they allege that SpaceX "vastly underestimated" and "did not anticipate" the acoustic effects of its rocket testing in this "uncharted" area of "scientific and regulatory" uncertainty. FAC ¶ 70. That is not "ill-will, animus, or design" to harm. *Seminole Pipeline*, 979 S.W.2d at 757. It is at most a claim that SpaceX displayed "indifference" to Plaintiffs' rights and "underestimated" the risks involved. FAC ¶¶ 264, 265. Plaintiffs' trespass theory fares no better: their assertion that SpaceX

3

"intentionally and willfully opted to proceed" despite awareness of the alleged risks, FAC ¶ 272, is a conclusory label and, in any event, shows only an intent to launch rockets—not to enter or harm the Plaintiffs' properties—and therefore does not satisfy the heightened "deliberate and willful" trespass standard that Texas law requires to recover noneconomic damages. *Coinmach*, 417 S.W.3d at 922.

Plaintiffs have already tried once to fix this. But the FAC still fails to allege that SpaceX had a design to harm Plaintiffs personally. At most, Plaintiffs allege only an awareness of a generalized risk of potential harm to neighboring property owners. *See* FAC ¶¶ 95-97. These new allegations cannot support any inference of ill-will toward these Plaintiffs.

In sum, Texas law does not support Plaintiffs' claims for noneconomic damages, and this Court should dismiss them with prejudice.

## IV.    BACKGROUND

This case arises from SpaceX's activities to develop and test Starship, a fully reusable transportation system designed to carry both crew and cargo to Earth orbit, the Moon, Mars, and beyond. *See* Starship, SpaceX, https://www.spacex.com/vehicles/starship (last visited Aug. 11, 2026); FAC ¶¶ 1, 63-64. The hub of SpaceX's Starship operations is Starbase, Texas. FAC ¶ 64

Plaintiffs are 80 individuals who allege that they own property "in the areas surrounding SpaceX's Starbase launch site" and claim that their homes have been "damaged … by noise, vibrations, and sonic booms from SpaceX's Starship operations." FAC ¶ 2. They allege three causes of action: (1) negligence (*id.* ¶¶ 257-61), (2) gross negligence and exemplary damages (*id.* ¶¶ 262-68), and (3) trespass (*id.* ¶¶ 269-75). Plaintiffs seek both economic and noneconomic damages arising from alleged structural damage to their homes. *Id.* ¶¶ 98-256. Mental anguish is the only category of noneconomic damages Plaintiffs identify. *Id.* ¶¶ 268, 275.

The theory of liability running through the FAC is that SpaceX allegedly failed to

4

appreciate the acoustic consequences of its rockets.  Plaintiffs allege that SpaceX's Starship operations "rely on decades-old acoustic prediction model theories," that the novel configuration of Starship's engines "confounds these traditional modeling formulas," and that SpaceX "underestimated" the acoustic energy of its Starship launch vehicle.  *Id.* ¶¶ 68, 70.  This energy, they contend, damaged their homes located miles away.  Plaintiffs further allege that SpaceX "publicly acknowledged a scientific and regulatory knowledge deficit" regarding how noise and vibrations from the Starship vehicle could impact the surrounding area, and that SpaceX is "making significant investments in scientific research on blast and acoustics" to close that alleged "gap."  *Id.* ¶ 69.  By Plaintiffs' own account, SpaceX's Starship was "unprecedented" and "novel," and "Starship's operations are therefore experimental and iterative by nature," with "[e]ach launch generat[ing] new acoustic data for SpaceX and its regulators."  *See, e.g.*, *id.* ¶¶ 68-69.  But Plaintiffs also allege that (1) the SpaceX operations at issue were conducted within the licensing and oversight of the Federal Aviation Administration, *e.g.*, *id.* ¶¶ 70, 74-76, 78, 81-83, and (2) SpaceX, lacking Starship-specific data, assessed the potential for structural damage using acoustic thresholds and modeling tools drawn from prior rocket programs, *id.* ¶¶ 69, 81-83.

Property damage is the only purported injury that Plaintiffs allege, aside from mental anguish.  Specifically, every single Plaintiff pleads the same two allegations verbatim:  that their "home was damaged by the SpaceX launches" and that they have "suffered economic and non-economic damages in an amount to be determined at trial."  *See generally id.* ¶¶ 98-256.  They do not allege any personal injury or any form of harm other than structural damage.  *Id.*  Nor do they allege the specific type of damage their homes supposedly sustained.  *Id.*  But the regulatory materials Plaintiffs quote in the FAC discuss the possibility of damage to "windows and plaster," which the FAA describes as "the most sensitive parts of a structure to overpressure."  *Id*. ¶ 82

5

(quoting FAA, Final Programmatic Environmental Assessment for the SpaceX Starship/Super Heavy Launch Vehicle Program at the SpaceX Boca Chica Launch Site in Cameron County, Texas, at 67 (2022), https://www.faa.gov/sites/faa.gov/files/2022-06/PEA_for_SpaceX_Starship_ Super_Heavy_at_Boca_Chica_FINAL.pdf).

The FAC nowhere alleges that SpaceX harbored any ill-will towards Plaintiffs or acted with a purpose to harm them. The FAC does not allege that SpaceX targeted Plaintiffs, directed any conduct at them, or launched its rockets for the purpose of harming them. Plaintiffs' fundamental theory is that acoustic energy from launches conducted for reasons wholly unrelated to Plaintiffs reached their properties as an unintended byproduct of SpaceX's operations.

On July 10, 2026, SpaceX moved to dismiss Plaintiffs' claim for noneconomic damages because Plaintiffs did "not allege personal injuries, a special relationship with SpaceX, or ill-will, animus, or a desire to harm Plaintiffs personally." Dkt. 13 at 1. On July 29, 2026, Plaintiffs filed their FAC. Dkt. 23. However, Plaintiffs' amendment failed to cure the defects outlined in SpaceX's motion. As relevant to this motion, the FAC adds a new Section V, in which Plaintiffs allege that (1) in September 2019, SpaceX hired a real estate firm to appraise some properties because SpaceX purportedly "knew its Starship launches were going to cause property damage" and thereafter offered to buy out homes for roughly three times market value, FAC ¶ 95; (2) SpaceX carries FAA-mandated liability insurance, FAC ¶ 96; and (3) in February 2018, CEO Elon Musk made a public remark about launching near unpopulated land, FAC ¶ 97. The FAC also adds new language to the Gross Negligence count, alleging that SpaceX caused "non-economic damages for mental anguish," FAC ¶ 268, and to the Trespass count, alleging that SpaceX "was aware of the likelihood" that acoustic energy would enter Plaintiffs' properties and "intentionally and willfully opted to proceed" anyway, FAC ¶ 272, and that Plaintiffs suffered

6

"non-economic damages for mental anguish" as a result, FAC ¶ 275. Even with these additions, the FAC alleges no facts showing that SpaceX had any ill-will, animus, or intention to harm Plaintiffs or trespass on their land, or that the activities at issue were conducted for reasons having anything to do with Plaintiffs whatsoever.

## V.    ARGUMENT

Texas law generally bars noneconomic damages for property loss, *see, e.g.*, *City of Tyler*, 962 S.W.2d at 497-500, and Plaintiffs plead none of the limited circumstances that would warrant an exception. This Court should dismiss with prejudice Plaintiffs' claims for noneconomic damages predicated on alleged injury to their homes.

### A.    Texas Law Generally Prohibits Property-Based Noneconomic Damages.

Texas law strongly disfavors noneconomic damages and as a general rule prohibits noneconomic damages for injury to property. *See, e.g.*, *City of Tyler*, 962 S.W.2d at 497-500 (prohibiting noneconomic damages for property loss—flooded house); *see also, e.g.*, *Petco*, 144 S.W.3d at 562 (same—deceased pet); *Seminole Pipeline*, 979 S.W.2d at 757 (same—property explosion). "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish." *City of Tyler*, 962 S.W.2d at 494 (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)). And while "mental anguish is a real and serious harm," for "many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *City of Tyler*, 962 S.W.2d at 494.

Instead, Texas law strictly limits the availability of noneconomic damages, permitting such damages only where (1) the defendant engages in "intentional or malicious conduct," *id.* at 495 (e.g., libel, battery); (2) the defendant causes a "foreseeable" and "serious bodily injury," *id.* at 495-96 (e.g., brain deterioration, miscarriage); (3) the defendant commits a "breach of duty arising

7

out of certain special relationships," *id.* at 496 (e.g., physician-patient relationship, funeral-home body-preparation); or (4) the rare "few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result," *id.* (e.g., wrongful death suit). The claims here—alleging pure property loss from the noise and vibrations caused by rocket launches—"fall[] outside the types of cases in which mental anguish has traditionally been compensable under Texas or prevailing American law." *Id.* In fact, Plaintiffs have pleaded themselves squarely within *City of Tyler*'s prohibition. *See* FAC ¶¶ 268, 275 (alleging mental anguish was "caused by the severe and repeated acoustic trauma inflicted upon their homes"); *City of Tyler*, 962 S.W.2d at 499 ("emotional distress caused merely by the loss of …things" noncompensable).

There are good reasons why Texas "courts are not willing to recognize" noneconomic damages outside of the narrow categories recognized by the law. *City of Tyler*, 962 S.W.2d at 494-95. First, while "mental anguish" is "real" and "serious," "it is difficult to predict." *Id.* The existence and degree of emotional distress turn on "variability in human nature"—risking unpredictable liability for defendants and massive windfalls for plaintiffs. *Id.* Second, even where emotional distress is a "foreseeable result of wrongful conduct, its existence is inherently difficult to verify." *Id.* at 495. Because claims of subjective emotional distress are "easily fabricated and difficult to refute," courts restrict emotional distress "for the loss of things." *Seminole Pipeline*, 979 S.W.2d at 755. Third, while "persons may become distraught over the loss of property," the "resolution of such claims can be overly burdensome to the judicial system." *Id.* Courts often "restrict[]" property-based noneconomic damages—and exclude "[c]laims based on mere worry, anxiety, vexation, embarrassment, or anger"—in order to "preserve judicial resources." *Id.* For these reasons, among others, noneconomic damages are generally not available for "emotional

8

distress caused merely by the loss of things." *City of Tyler*, 962 S.W.2d at 499 (collecting similar authorities from the "overwhelming majority of American jurisdictions") (citation modified).

In applying these principles, Texas courts regularly reject noneconomic damages for property loss, and make clear that Texas law permits property-based noneconomic damages only in limited circumstances not present here. *See, e.g.*, *Seminole Pipeline*, 979 S.W.2d at 753-57; *see also, e.g.*, *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 353-54 (5th Cir. 1998) (*Erie* analysis turns on state supreme and appellate court decisions). In *City of Tyler*, the Texas Supreme Court held that "damages measured by diminution in value are an adequate and appropriate remedy for negligent harm to real or personal property," and noneconomic damages "based solely on negligent property damage [are] not compensable as a matter of law." *City of Tyler*, 962 S.W.2d at 497 (no noneconomic damages—house flooded). And the Texas Courts of Appeals have enforced the same limits, holding that even "grossly negligent property damage can support a claim for mental anguish ***only where there is evidence of some ill-will, animus, or desire to harm the plaintiff personally***." *Petco*, 144 S.W.3d at 562 (emphasis added) (no noneconomic damages—pet died after escaping groomer); *Seminole Pipeline*, 979 S.W.2d at 753-57 (no noneconomic damages—explosion caused property damage).

These decisions are no outliers—courts "have repeatedly denied [noneconomic damages] in cases where, as here, the plaintiffs' mental anguish arose out of legal injuries involving the home and its contents." *City of Tyler*, 962 S.W.2d at 498 (collecting cases).

**B.      Plaintiffs Fail to Plead an Exception to the General Prohibition on Property-Based Noneconomic Damages.**

Plaintiffs allege pure property loss—alleging that SpaceX's rocket launches caused structural damage to their properties, entitling them to both "economic and non-economic damages." *See, e.g.*, FAC ¶¶ 2, 4, 98-256, 268, 275. But noneconomic damages are unavailable

9

for that injury as a matter of law, and Plaintiffs plead none of the limited exceptions. Structural damage is the kind of harm for which simple repair or diminution damages provide "an adequate and appropriate remedy" and does not require noneconomic damages to be made whole. *City of Tyler*, 962 S.W.2d at 497.

### 1.     Plaintiffs Do Not Allege Malicious Misconduct, Ill-Will, or Animus.

"[E]motional distress is not usually recoverable as an element of property damages unless an improper motive is involved." *Seminole Pipeline*, 979 S.W.2d at 757. For that reason, Texas courts have held that "where a claim of mental anguish is based solely upon property damage resulting from gross negligence, recovery is contingent upon evidence of some ***ill-will, animus, or design to harm the plaintiff personally***." *Id.* (emphasis added); *see also Petco*, 144 S.W.3d at 562 (same).

In *Seminole Pipeline*, for example, plaintiffs alleged that they had "sorrow [over] the destruction of their property" and that defendants were "grossly negligent" in their operations. *Seminole Pipeline*, 979 S.W.2d at 757. But the court held that there was "no evidence to suggest [defendants'] actions were motivated by animus, hostility, malevolence, or ill-will," and "[w]ithout this additional element, the presence of gross negligence alone is not sufficient to support an award for mental anguish arising solely from damage to property." *Id.*

Similarly, in *Petco*, plaintiff alleged that Petco was "gross[ly] negligen[t]" in allowing a pet to escape and run into traffic, where it was killed. *Petco*, 144 S.W.3d at 562. But the court denied noneconomic damages, holding that "the only Texas court to have subsequently addressed the question concluded that grossly negligent property damage can support a claim for mental anguish only where there is evidence of some ill-will, animus, or desire to harm the plaintiff personally." *Id.* Neither the proof nor the "pleadings" showed "ill-will, animus or desire by Petco

10

to harm her personally," so the court rejected the plaintiff's claim for noneconomic damages. *Id.* The court contrasted the facts of the case with the facts of *City of Garland v. White*, where emotional distress damages were allowed based on "the intentional, premeditated shooting of a dog." *Id.* (citing *City of Garland v. White*, 368 S.W.2d 12, 14-15 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e.)).

The reasoning in *Seminole* and *Petco* applies fully here and bars Plaintiffs' claims for noneconomic damages. Nowhere in the FAC do Plaintiffs allege that SpaceX acted with ill-will, animus, or a desire to harm Plaintiffs personally. Nor do Plaintiffs allege that SpaceX targeted Plaintiffs. *See, e.g.*, FAC ¶¶ 98-256. Plaintiffs do not even allege that SpaceX launched its rockets for any reason connected to Plaintiffs. *Id.* Plaintiffs allege the opposite repeatedly: that SpaceX failed to recognize that its rocket launches and tests could cause acoustic effects that would damage surrounding properties—based on unanticipated noise and vibration effects in this area of scientific uncertainty—and proceeded with "conscious ***indifference***" to Plaintiffs. FAC ¶¶ 264, 267 (emphasis added); *see also, e.g.*, FAC ¶ 69 (SpaceX acknowledged the "scientific and regulatory knowledge deficit" and "gap in data" on acoustic effects), ¶ 70 (SpaceX "did not anticipate" and "vastly underestimated" the acoustic effects), ¶ 71 (SpaceX acted despite "new scientific questions" presented over its acoustic effects), ¶ 81 (SpaceX acted "[d]ue to no data being available yet" and "leverage[d] generic analysis").

And even in Plaintiffs' new, contradictory allegations claiming SpaceX was aware of these risks, Plaintiffs still do not plead facts showing ill-will, animus, or a desire to harm Plaintiffs personally. To the contrary, Plaintiffs allege SpaceX tried to purchase homes (for three times their value) to *avoid* "disruptions to residents," FAC ¶ 95, that it purchased insurance to *compensate* homeowners for "property damage," *id*. ¶ 96, and that SpaceX selected a sparsely populated area

11

to *minimize* the risk of harm from its operations, *id.* ¶ 97. None of these new allegations closes the gap in Plaintiffs' original pleading.

To start, Plaintiffs' buyout allegations suggest, at most, awareness of a generalized, community risk, not a design to harm these 80 specific Plaintiffs personally, as *Seminole Pipeline* requires. 979 S.W.2d at 756. In fact, none of the Plaintiffs even alleges that he or she received a buyout letter or owns property in the appraised neighborhood. Boca Chica Village, the community Plaintiffs reference as receiving buyout letters, is now Starbase. FAC ¶ 95; Request for Judicial Notice ("RJN"), Ex. 1. None of the Plaintiffs alleges he or she owns property at a Starbase address. *See* FAC ¶¶ 98-256. And Laguna Vista, Laguna Heights, Port Isabel, and South Padre Island— the communities where Plaintiffs allege they own properties—are all miles away from Starbase and the Starship launch pad:



12

RJN, Ex. 2.  Offers to purchase homes at a substantial premium, moreover, cannot be squared with any inference of ill will: paying owners to leave an area to avoid potential disturbance is the opposite of "animus, hostility, malevolence, or ill-will."  *Seminole Pipeline*, 979 S.W.2d  at 757.

That SpaceX carries FAA-mandated liability insurance, FAC ¶ 96, adds nothing—it reflects regulatory and statutory compliance, not evidence of malice or a design to harm anyone, let alone these Plaintiffs.  *See* Fed. R. Evid. 411 (evidence of insurance inadmissible to prove wrongful conduct).  And the alleged statement attributed to Elon Musk—five years before the first Starship flight at issue—that "we've got a lot of land with nobody around," so there would be no harm "if it blows up," FAC ¶ 97, is the antithesis of an allegation that SpaceX knowingly targeted these specific homeowners.  The statement reflects, at most, a mistaken belief about the proximity of neighboring landowners, not a knowledge or desire to harm Plaintiffs personally.  And the statement is irrelevant, in any event, because Plaintiffs' claims are based on alleged rocket *noise*— not any explosions.  FAC ¶¶ 2, 62, 271-74.

Plaintiffs therefore fail to allege the improper motive Texas law requires, because they do not allege a tort perpetrated "against the [property] owner personally," or with "personal animus against the [property] owner."  *Seminole Pipeline*, 979 S.W.2d at 756.  Allegations of negligence (or gross negligence)—*e.g.*, that SpaceX failed to adequately anticipate the effects of its rocket launches, FAC ¶¶ 69-70—do not establish ill-intent or animus.  *See, e.g.*, *Petco*, 144 S.W.3d at 561-63 (gross negligence insufficient for property-based noneconomic damages); *Seminole Pipeline*, 979 S.W.2d at 757 (same); *see also, e.g.*, *City of Tyler*, 962 S.W.2d at 495-96 (negligence insufficient for property-based noneconomic damages).  Nor do allegations of knowledge or indifference.  *Seminole Pipeline*, 979 S.W.2d at 756; *see also, e.g.*, *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 197 (Tex. App.—Houston [14th Dist.] 2003) ("[a]s

contrasted with 'intentionally,' 'knowingly' is a lower mental state"). Plaintiffs acknowledge that SpaceX took precautionary steps—including operating under federal supervision and implementing testing practices Plaintiffs contend were inadequate—and only quibble with whether SpaceX exercised sufficient care. *See, e.g.*, FAC ¶¶ 70, 74, 76. But even if SpaceX "conscious[ly] disregard[ed]" Plaintiffs' property interests and "deem[ed] it more expedient" to launch rockets rather than take additional safeguards, that would still amount to at most "gross negligence unaccompanied by personal animus against the [property] owner[s]," which is not enough for noneconomic damages. *Seminole Pipeline*, 979 S.W.2d at 756.

Finally, simply adding the words "knowingly" and "willfully" into their general allegations (FAC ¶¶ 2, 4) and causes of action (FAC ¶ 272) does not elevate Plaintiffs' claims to the animus-based intent Texas law requires. *Seminole Pipeline*, 979 S.W.2d at 757; *Comsys*, 130 S.W.3d at 197. To the contrary, inserting "intentionally and willfully" before "opted to proceed" is precisely the kind of "formulaic recitation" and conclusory "label[]" that does not state a plausible claim to relief. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. And it is simply implausible that SpaceX deliberately targeted or acted with malice towards specific homeowners in conducting its operations. Even after amendment, Plaintiffs have not alleged a single fact that ties SpaceX's conduct to any Plaintiff or their property specifically.

In short, Plaintiffs have failed to allege that SpaceX's "actions were motivated by animus, hostility, malevolence, or ill-will," and "[w]ithout this additional element, the presence of gross negligence alone is not sufficient to support an award for mental anguish arising solely from damage to property." *Seminole Pipeline*, 979 S.W.2d at 757.

### 2. Plaintiffs' Trespass Allegations Do Not Support a Claim for Noneconomic Damages.

Plaintiffs' trespass claim cannot support noneconomic damages for similar reasons.

14

Plaintiffs tried to defeat SpaceX's motion by adding new labels of "deliberately," "intentionally and willfully" throughout the trespass claim. FAC ¶¶ 269-75. Plaintiffs also added allegations that SpaceX was "aware of the likelihood that severe rocket-generated acoustic energy would enter Plaintiffs['] properties," that SpaceX "understood the risk posed in causing structural and other damages," and that SpaceX "intentionally and willfully opted to proceed despite this knowledge." FAC ¶ 272. However, these allegations do not meet the heightened showing Texas law demands before a plaintiff may recover mental-anguish damages for a trespass.

Under Texas law, a claim for trespass requires a showing that "(1) the plaintiff owns or has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied); *see also Lakeside Village Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 36 (Tex. App.— El Paso 2017, pet. denied) (same). For "the intent element of the tort, the only relevant intent is **that of the actor to enter the property**." *Lakeside Village*, 545 S.W.3d at 36 (emphasis added). The intent element of trespass is thus satisfied by an intent to perform the act that results in the entry—not by an intent to harm the plaintiff personally. *Id.*[2]

But simply satisfying the intent element of the underlying tort does not entitle Plaintiffs to noneconomic damages. Texas courts require a separate, heightened showing before mental-anguish damages may be awarded for a trespass: the trespass must be "deliberate and willful," not merely intentional in the bare sense that satisfies the tort's liability element. *Coinmach*, 417 S.W.3d at 922 ("Texas courts have required a showing of deliberate and willful trespass and actual

---

[2] SpaceX disputes that Plaintiffs have stated a claim for trespass on which relief can be granted, but does not request dismissal on that basis in this motion.

property damage before awarding damages for emotional distress or mental anguish, thereby limiting the potential for such 'excessive liability.'") (quoting *Pargas of Longview, Inc. v. Jones*, 573 S.W.2d 571, 574 (Tex. Civ. App.—Texarkana 1978, no writ)); *see also Cox v. Helena Chem. Co.*, 630 S.W.3d 234, 249 (Tex. App.—Eastland 2020), *aff'd in part, rev'd in part sub nom. Helena Chem. Co. v. Cox*, 664 S.W.3d 66 (Tex. 2023) (same)[3]; *Lakeside Village*, 545 S.W.3d at 37 (same); *Murphy v. Moore*, No. 2:20-cv-190-Z, 2021 WL 1819698, at *5 (N.D. Tex. May 6, 2021) (dismissing mental anguish damages for trespass because plaintiff did not allege defendant's "actions were malicious, deliberate, or willful").

*Cox* is directly on point. There, farmers sued a chemical company for crop damage caused by aerial herbicide drift, asserting negligence, gross negligence, and trespass, and seeking mental-anguish and punitive damages. 630 S.W.3d at 239. The Court of Appeals affirmed summary judgment against the mental-anguish claims. On trespass, the court explained that "mental anguish damages cannot be awarded for a trespass unless the trespass was 'deliberate and willful.'" *Id.* at 249 (citing *Coinmach*, 417 S.W.3d at 922; *Lakeside Village*, 545 S.W.3d at 37). Critically, even though the plaintiffs presented evidence that the defendant and its pilots "were aware of the dangers of [chemical] drift and the potential for [the chemical] to drift in adverse conditions," the court held that plaintiffs "failed to present any evidence" that defendants or their pilots "willfully and deliberately caused [the chemical] to drift onto [plaintiffs'] properties." *Id.* Awareness of the generalized risk of harm and intentionally proceeding with the conduct was insufficient to establish a "deliberate and willful" trespass. *Id.*

So too here. Plaintiffs' allegations that "SpaceX was aware of the likelihood that severe

---

[3] The Texas Supreme Court reversed on causation grounds and rendered judgment that the plaintiffs take nothing. It did not disturb the Court of Appeals' holding on mental-anguish damages, which the plaintiffs did not challenge. *See Helena Chem.*, 664 S.W.3d at 82.

rocket-generated acoustic energy would enter Plaintiffs['] properties" and "intentionally and willfully opted to proceed despite this knowledge" (FAC ¶ 272) are materially indistinguishable from the conduct at issue in *Cox.* The *Cox* defendant knew its herbicide could drift onto neighboring fields; SpaceX allegedly knew its acoustic energy could reach neighboring properties. The *Cox* defendant proceeded with its aerial spraying; SpaceX proceeded with its FAA-licensed Starship operations. In both cases, the defendant's awareness of a generalized risk—followed by continuation of the activity—does not establish that the defendant "willfully and deliberately caused" the intrusion onto the specific plaintiffs' properties.

Plaintiffs' naked assertions that SpaceX's conduct was "intentional[] and willful[]" or "deliberate[]" do not save them. These are precisely the kind of conclusory, formulaic recitations that *Twombly/Iqbal* reject: they purport to recite the legal standard without supplying the underlying facts showing that SpaceX purposefully harmed Plaintiffs' properties. And as described above, Plaintiffs' factual allegations undercut any such inference. *See supra* V.B.1.

In short, Plaintiffs' characterization of SpaceX's conduct as "physically, intentionally, deliberately, and voluntarily caus[ing] ongoing rocket-generated acoustic intrusions ... to enter the Properties" (FAC ¶ 271) could satisfy, at most, the requirement of ordinary intent to enter the property. *See Lakeside Village*, 545 S.W.3d at 37. It does not supply the separate, heightened showing of a "deliberate and willful trespass," *Coinmach*, 417 S.W.3d at 922, or a design to harm these Plaintiffs personally, *Seminole Pipeline*, 979 S.W.2d at 757, that Texas law requires before noneconomic damages may be awarded for trespass. Accordingly, Plaintiffs' trespass allegations—even after amendment—cannot sustain a claim for noneconomic damages.

### 3.       Plaintiffs Do Not Allege Anything Else Warranting Noneconomic Damages for Their Property Loss.

There is no other basis to award noneconomic damages for the property loss alleged here.

That is because Plaintiffs have not alleged bodily injury, shocking and disturbing harms, or breach of special duties that warrant noneconomic damages. *See, e.g.*, *City of Tyler*, 962 S.W.2d at 495-96.

*No Bodily Harm.*    Plaintiffs have not alleged "foreseeable" and "serious" bodily injury. *City of Tyler*, 962 S.W.2d at 495-96.    Texas courts have permitted noneconomic damages for serious bodily injury.    But Plaintiffs allege only property injury—not personal injury. *See, e.g.*, FAC ¶¶ 98-256.

*No Breach of Special Duty.*    Plaintiffs have not alleged any breach of duty arising out of a special relationship.    Texas courts have permitted noneconomic damages for such breaches— including violation of the "physician-patient relationship," misconduct in "preparing a corpse for burial," or "delivering news of a family emergency." *City of Tyler*, 962 S.W.2d at 496 (collecting cases); *see, e.g.*, *Petco*, 144 S.W.3d at 562 (same).    But there is "no suggestion in this case of any special relationship that could impose such a duty on [SpaceX] with respect to [these residential property-owners]." *City of Tyler*, 962 S.W.2d at 496.

*No Shocking or Disturbing Injuries.*    There is no other reason to permit noneconomic damages.    Texas courts hold that "without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, [they] permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result"—such as "suits for wrongful death," *City of Tyler*, 962 S.W.2d at 496 (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 551 (Tex. 1985)), and "actions by bystanders for a close family member's serious injury," *id.* (citing *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988)).    But Plaintiffs—who vaguely allege only that their "home[s] [were] damaged," FAC ¶¶ 98-256—have not alleged "any of the injuries

18

that [Texas courts] ha[ve] recognized as giving rise to mental anguish damages based on their shocking and disturbing nature." *City of Tyler*, 962 S.W.2d at 496.

\* \* \*

Taken together, then, the Plaintiffs plead the opposite of what Texas law requires at every turn. They plead that their mental anguish flows from "acoustic trauma inflicted upon their homes," FAC ¶¶ 268, 275—the paradigm of "emotional distress caused merely by the loss of … things," *City of Tyler*, 962 S.W.2d at 499. They plead scientific uncertainty and (at most) conscious indifference, not the "ill-will, animus, or design to harm the plaintiff personally" that *Seminole Pipeline* demands. 979 S.W.2d at 757. They plead the ordinary intent to launch rockets, not the "deliberate and willful" trespass that *Coinmach* demands. 417 S.W.3d at 922. And they plead no bodily injury, no special relationship, and none of the shocking and disturbing harms for which Texas courts have carved out an exception. What is left is a straightforward claim for structural damage to real property, for which repair and diminution damages are "an adequate and appropriate remedy," *City of Tyler*, 962 S.W.2d at 497, but which cannot support recovery of noneconomic damages.

## C.      Dismissal with Prejudice Is Warranted.

The Court should dismiss Plaintiffs' claim for noneconomic damages with prejudice because further amendment would be futile. Plaintiffs have already exercised their one amendment as of right under Rule 15(a)(1)(B), specifically in an attempt to cure this deficiency. As Plaintiffs conceded, the FAC's amendments are "aimed specifically at responding to the very argument that SpaceX makes in its motion." Dkt. 25 at 1. Despite this effort, the FAC's new allegations—even fully credited—establish at most that SpaceX was aware of a generalized risk of potential property damage, not that SpaceX acted with "ill-will, animus, or design to harm the

19

plaintiff[s] personally." *Seminole Pipeline*, 979 S.W.2d at 757. This deficiency is legal, not factual, and no set of additional facts can make noneconomic damages available under Plaintiffs' theory of the case. Plaintiffs' attempt to cure the deficiency—with full awareness of SpaceX's specific argument—confirms rather than remedies the insufficiency, and the Court should dismiss with prejudice and deny further leave to amend. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (dismissal with prejudice proper where amendment would be futile).

## VI.    RELIEF SOUGHT

For the foregoing reasons, SpaceX respectfully requests that the Court dismiss with prejudice Plaintiffs' request in the FAC for noneconomic damages for failure to state a claim.

Dated: August 12, 2026                              GIBSON, DUNN & CRUTCHER LLP


                                                    */s/ John T. Cox III*
                                                    John T. Cox III
                                                    *Attorney-in-Charge*
                                                    Tx. Bar No. 24003722
                                                    S.D. Tex. Bar No. 27251
                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    811 Main Street, Suite 3000
                                                    Houston, Texas 77002
                                                    Telephone: 346-718-6604
                                                    Facsimile: 346-718-6941
                                                    tcox@gibsondunn.com

                                                    Elizabeth K. McCloskey
                                                    (admitted *pro hac vice*)
                                                    One Embarcadero Center,
                                                    Suite 2600
                                                    San Francisco, CA 94111-3715
                                                    Telephone: (415) 393-8200
                                                    Facsimile: (415) 393-8306
                                                    emccloskey@gibsondunn.com

                                                    Joseph D. Edmonds
                                                    (admitted *pro hac vice*)
                                                    3161 Michelson Drive
                                                    Suite 1200
                                                    Irvine, CA 92612-4412
                                                    Telephone: (949) 451-3805
                                                    jedmonds@gibsondunn.com

                                                    Michael Rodriguez
                                                    Tx. Bar No. 00791553
                                                    S.D. Tex. Bar No. 18759
                                                    Baltazar Salazar
                                                    Tx. Bar No. 24106385
                                                    S.D. Tex. Bar No. 3135288
                                                    ATLAS HALL RODRIGUEZ
                                                    818 W Pecan Blvd
                                                    McAllen, TX 78501
                                                    Telephone: (956) 574-9333
                                                    mrodriguez@atlashall.com
                                                    ssalazar@atlashall.com
                                                    *Counsel for Space Exploration Technologies*
                                                    *Corp.*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2026, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

/s/ *John T. Cox III*
John T. Cox III

22