**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JAZMIN AGUILAR, *et al.*,<br><br>Plaintiffs,<br><br>VS.<br><br>SPACE EXPLORATION TECHNOLOGIES CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:26-cv-00485 |

**DEFENDANT SPACEX'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIM FOR NONECONOMIC DAMAGES**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Noneconomic Damages Are Unavailable For Plaintiffs' Negligence Claims. ..... 2
B. Noneconomic Damages Are Unavailable For Plaintiffs' Trespass Claim. ..... 7
C. The Court Should Resolve Noneconomic Damages Now, On The Pleadings. ..... 10
D. Noneconomic Damages Should Be Dismissed With Prejudice. ..... 11
III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Aleman v. Abbott*,
No. 3:06-cv-2208-B, 2007 WL 9717304 (N.D. Tex. Sept. 11, 2007) .... 10

*Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*,
29 F.4th 226 (5th Cir. 2022) .... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2, 3, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 2, 3, 4, 11

*City of Tyler v. Likes*,
962 S.W.2d 489 (Tex. 1997) .... 1, 2, 9

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
417 S.W.3d 909 (Tex. 2013) .... 1, 7, 11

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,
130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003) .... 5

*Cox v. Helena Chem. Co.*,
630 S.W.3d 234 (Tex. App.—Eastland 2020) .... 2, 5, 6, 7, 8, 9, 10

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner*,
505 S.W.3d 580 (Tex. 2016) .... 6

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) .... 11

*S.H. b/n/f Hart v. Midland Indep. Sch. Dist.*,
No. 24-cv-00131-DC-RCG, 2025 WL 325270 (W.D. Tex. Jan. 13, 2025) .... 10

*Jones v. Robinson Prop. Grp., L.P.*,
427 F.3d 987 (5th Cir. 2005) .... 11, 12

*Kelly Custom Homes, LLC v. Hopper*,
No. 14-23-00793-CV, 2024 WL 3765393 (Tex. App.—Houston [14th Dist.]
Aug. 13, 2024, no pet.) .... 9

*Lakeside Village Homeowners Ass'n, Inc. v. Belanger*,
545 S.W.3d 15 (Tex. App.—El Paso 2017, pet. denied) .... 7

*Petco Animal Supplies, Inc. v. Schuster*,
144 S.W.3d 554 (Tex. App.—Austin 2004, no pet.) .... 1, 3, 6, 9

*Reed v. LKQ Corp.*,
436 F. Supp. 3d 892 (N.D. Tex. 2020) .... 9

*Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*,
979 S.W.2d 730 (Tex. App.—Houston [14th Dist.] 1998, no pet.)........1, 2, 3, 4, 5, 6, 7, 9, 11

*Skinner v. Ard*,
No. 19-66-JWD-EWD, 2020 WL 620790 (M.D. La. Feb. 10, 2020) ....................................10

*Teledyne Expl. Co. v. Klotz*,
694 S.W.2d 109 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)......................................9

*Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*,
542 F.3d 475 (5th Cir. 2008) .....................................................................................8

**Rules**

Fed. R. Civ. P. 1.........................................................................................................11

Fed. R. Civ. P. 12..........................................................................................................8

Fed. R. Evid. 201 ..........................................................................................................4

## I. INTRODUCTION

Texas law strongly disfavors noneconomic damages, and as a general rule prohibits noneconomic damages for injury to property. *See, e.g.*, *City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex. 1997). Plaintiffs do not dispute this tenet of Texas law. And Plaintiffs have now abandoned essentially every justification for noneconomic damages: they offer no argument to support (1) animus or ill-will, (2) personal injuries, (3) breach of a special duty, or (4) shocking or disturbing injuries. Instead, their sole remaining argument for noneconomic damages is that SpaceX acted intentionally. But Plaintiffs' complaint comes nowhere close to alleging facts sufficient to recover noneconomic damages for intentional harm.

Plaintiffs needed to plead facts showing that SpaceX intended their harm, not that SpaceX intended to launch rockets, or was reckless or indifferent to whether its launches caused harm. They have not done so for their negligence claims. *See, e.g.*, *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (noneconomic damages for negligence claims require ill-will, animus, or design to harm plaintiffs personally); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 562-63 (Tex. App.—Austin 2004, no pet.) (same). And they have not done so for their trespass claim. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 922 (Tex. 2013) (noneconomic damages for trespass claims require "deliberate and willful" trespass). Plaintiffs fundamentally misunderstand their pleading burden, and their conclusory allegations and labels are insufficient as a matter of law. Despite their amendment, Plaintiffs allege no facts showing that SpaceX had any ill-will, animus, or intention to harm Plaintiffs or trespass on their land, or that its reasons for engaging in activities have anything to do with Plaintiffs.

All 80 Plaintiffs in this case claim mental anguish over alleged damage to their homes

resulting from rocket launch noise. But claims of emotional distress are "easily fabricated and difficult to refute," so they generally are not allowed "for the loss of things." *Seminole Pipeline*, 979 S.W.2d at 755. Plaintiffs' claims fall squarely within the prohibition and should be dismissed.

## II. ARGUMENT

Noneconomic damages for property loss are sharply circumscribed under Texas law and available only in limited circumstances. *City of Tyler*, 962 S.W.2d at 497-500. Here, Plaintiffs have failed to plausibly allege that they satisfy any of the narrow, limited exceptions to Texas's general bar on property-based noneconomic damages for either their negligence or trespass claims. That is because Plaintiffs have failed to plausibly allege that SpaceX acted with "ill-will, animus, or design to harm the plaintiff[s] personally," *Seminole Pipeline*, 979 S.W.2d at 757 (negligence), or that SpaceX acted "deliberate[ly] and willful[ly]," *Cox v. Helena Chem. Co.,* 630 S.W.3d 234, 249 (Tex. App.—Eastland 2020) (trespass), *aff'd in part, rev'd in part sub nom. Helena Chem. Co. v. Cox*, 664 S.W.3d 66 (Tex. 2023). And although Plaintiffs recently amended their complaint to state that SpaceX acted "intentionally" and "willfully," those "formulaic recitation[s]" and conclusory "labels" cannot save Plaintiffs from dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Noneconomic Damages Are Unavailable For Plaintiffs' Negligence Claims.

This Court should dismiss Plaintiffs' request for noneconomic damages for their negligence claims. FAC ¶¶ 257-268 (Counts I-II). Under Texas law, "emotional distress is not usually recoverable as an element of property damage unless an improper motive is involved." *Seminole Pipeline*, 979 S.W.2d at 757. For that reason, Texas courts have consistently held that "where a claim of mental anguish is based solely upon property damage resulting from gross negligence, recovery is contingent upon evidence of some ill-will, animus, or design to harm the

plaintiff personally." *Seminole Pipeline*, 979 S.W.2d at 757 (rejecting noneconomic damages); *see, e.g.*, *Petco*, 144 S.W.3d at 562-63 (rejecting noneconomic damages absent evidence of "ill-will, animus or desire by [the defendant] to harm [plaintiff] personally"). Here, as SpaceX explained, Mot. 10-14, Plaintiffs have never alleged "'ill-will, animus, or design to harm the plaintiff[s] personally.'" *Petco*, 144 S.W.3d at 562 (citing *Seminole Pipeline*, 979 S.W.2d at 757). None of Plaintiffs' *specific factual allegations* (the only thing that can save them from dismissal) comes close to adequately alleging that SpaceX intended to specifically harm Plaintiffs or their properties. *Seminole Pipeline*, 979 S.W.2d at 756 (requiring intent to cause harm "[to] the [property] owner[s] personally," or with "personal animus against the [property] owner[s]"). As for the unsupported assertions of "knowledge" and "intent" dashed into the complaint (*see, e.g.*, FAC ¶¶ 2, 4, 272), such "formulaic recitation[s]" and conclusory "labels" are not enough. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. In their opposition, Plaintiffs offer several additional allegations to support their claim for noneconomic damages, but all of them fail. Opp. 9.

***Buy-Outs.*** Plaintiffs assert that "SpaceX appraised and offered to buy ***the very homes in question*** because it knew its launches would damage them." Opp. 1-2 (emphasis added). They repeat that assertion several times. *See* Opp. 9, 12. This statement is unequivocally false. And such an allegation is found nowhere in the complaint. What the complaint alleges is that SpaceX offered to buy "properties in Boca Chica Village." FAC ¶ 95. It does not allege that any Plaintiffs received an offer to purchase their properties. In fact, Plaintiffs all allege the addresses where their houses are located, and none are in Boca Chica Village, or even within several miles of it. Mot. 12. The locations of both Boca Chica Village and the cities where Plaintiffs' addresses are located are "generally known within the trial court's territorial jurisdiction," and subject to judicial notice. Fed. R. Evid. 201. SpaceX's offers to purchase homes miles away from Plaintiffs (at a substantial

premium) do not plausibly support an inference of ill-will or improper intent toward Plaintiffs specifically.

***Insurance.*** Plaintiffs also rely on SpaceX's statutorily mandated insurance. Opp. 9. But obtaining insurance cannot establish the "improper motive" necessary for noneconomic damages. *Seminole Pipeline*, 979 S.W.2d at 757. Plaintiffs allege that the United States makes SpaceX carry insurance before launching rockets from domestic soil. As SpaceX previously explained, the fact that SpaceX carries FAA-mandated liability insurance cannot show improper motive. Mot. 13. To hold otherwise would be to say that the millions of drivers who comply with state law mandating liability insurance are guilty of the same improper motive every time they take the wheel, or every business that purchases a policy to guard against accidental harm intends any harm that occurs. The Court is not required to draw such facially implausible inferences. *See Twombly*, 550 U.S. at 555-56.

***Licensing.*** Plaintiffs now say that SpaceX "scrubbed the adverse acoustic thresholds from its own public filings," kept launching "while stripping the adverse numbers from its public filings," and did so after "its own flight data confirmed the danger," all to manufacture "plausible deniability." Opp. 2, 6, 9. What the complaint actually alleges is that after its first four flights, SpaceX submitted "a revision of its 2021 Assessment," made "in light of data from SpaceX's Starship Flight Tests 1 [through] 4," to the FAA, the federal regulator that licenses and oversees every launch. FAC ¶ 76. In that revision, SpaceX relied on a different published study for its structural-damage thresholds: "another study from 2021," reporting 135 dB and 140 dB figures. *Id.* Nothing was hidden: the revision sits on the FAA's public website, where Plaintiffs found it and quoted it. *Id.* ¶ 83; *id.* ¶ 76 n.29. The original 2021 assessment remains public too. *Id.* ¶ 74 & n.26. And the complaint itself pleads that the literature offers a range of competing thresholds:

110, 111, 120, 130, 135, and 140 dB, and 2 to 21 psf. *Id.* ¶¶ 74-84. At most, the complaint alleges that the revision "signaled awareness of the risk of property damage" and that SpaceX "has been aware" of its acoustic levels. *Id.* ¶¶ 76, 85. But awareness is knowledge, which is "a lower mental state" than intent. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 197 (Tex. App.—Houston [14th Dist.] 2003). And knowledge paired with continued operations is exactly what *Seminole* and *Cox* hold insufficient. *Seminole Pipeline*, 979 S.W.2d at 756-57; *Cox*, 630 S.W.3d at 249. Likewise, awareness of a probabilistic damage rate cannot show a "design to harm the plaintiff personally." *Seminole Pipeline,* 979 S.W.2d at 757. The filings Plaintiffs invoke put that rate at roughly one damage claim per 100 households exposed at 120 dB, and one per 1,000 at 111 dB. FAC ¶ 74. A one-in-a-hundred or one-in-a-thousand chance of producing injury is the *opposite* of an intent to harm a specific home.

***Launches.*** Plaintiffs invoke SpaceX's inaugural test flight, when liftoff "carve[d] a crater" and scattered debris, as proof that SpaceX knew firsthand how destructive its launches were. Opp. 9. To the contrary, Plaintiffs' complaint describes that event as a surprise: SpaceX "did not anticipate the destruction of the pad," stating, "If we had expected to dig a hole, we would not have flown." FAC ¶ 70. Being wrong about one's own rocket is a failure to adequately predict, not a "design to harm the plaintiff[s] personally." *Seminole Pipeline,* 979 S.W.2d at 757. And the complaint pleads what happened next: the FAA grounded the program "for months," requiring "sixty-three corrective actions," before Starship flew again. FAC ¶ 70. SpaceX standing down and fixing its mistakes under federal supervision is not a fact showing "conscious indifference" to neighbors, *id.* ¶ 264, much less malice or intent. Plaintiffs also argue that SpaceX knew its launches were loud and damaging based on independent studies and its own data. Opp. 9. But simple awareness of noise levels is nothing more than awareness of a risk, exactly what *Cox* held

is not enough. *Cox,* 630 S.W.3d at 249.

***Intent.*** Plaintiffs also try to lower the bar by arguing that "intent" only requires "substantial certainty" and that they have alleged that SpaceX was "substantially certain" that its rocket launches would damage Plaintiffs' properties. Opp. 8-9 (quoting *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 605 (Tex. 2016) (intentional nuisance)). But Plaintiffs do not support that standard, and in any event cannot meet it. First, *Crosstex* set the standard for intentional nuisance liability, and said nothing about the standard for noneconomic damages. *Crosstex*, 505 S.W.3d at 604. *Crosstex* did not overrule the decades of Texas precedent holding that merely being "cognizant of the hazardous danger" and "consciously disregard[ing]" the risk is insufficient for noneconomic damages. *Seminole Pipeline*, 979 S.W.2d at 750, 757; *Petco*, 144 S.W.3d at 562. Second, Plaintiffs do not allege that SpaceX was substantially certain its rockets would damage Plaintiffs' properties; they allege, at most, that SpaceX "vastly underestimated" its rockets' effects. FAC ¶ 70. There was nothing "substantially certain" about any property damage here. *Crosstex*, 505 S.W.3d at 605. Plaintiffs' own pleading forecloses any certainty. The complaint quotes SpaceX's 2024 assessment concluding that damage was "extremely unlikely" and of "very low probability" at the overpressures at issue, FAC ¶ 83, far from "substantially certain to result." *Crosstex*, 505 S.W.3d at 605.

* * *

Taken together, Plaintiffs' allegations do not plausibly suggest that SpaceX specifically intended to harm distant homeowners. By Plaintiffs' own account, SpaceX conducted its launches under FAA licensing and oversight, FAC ¶¶ 70, 74-76, 78, 81-83; submitted noise assessments to its regulator before it ever flew, *id.* ¶ 74; "leverag[ed] generic analysis" from prior rocket programs because no Starship-specific data yet existed, *id.* ¶ 81; completed the sixty-three corrective actions

the FAA required after the first flight's unanticipated effects, *id.* ¶ 70; offered to buy out homes in Boca Chica Village at a claimed three times market value to "minimize disruptions to citizens," *id.* ¶ 95; and carried the insurance the FAA requires, *id.* ¶¶ 82, 96. Plaintiffs quibble with whether those efforts were good enough. *See, e.g.*, *id.* ¶¶ 70, 74, 76. But these actions do not show "animus, hostility, malevolence, or ill-will." *Seminole Pipeline*, 979 S.W.2d at 757. Negligent conduct is not intentional conduct—and certainly not the type of intentional misconduct necessary under *Petco* and *Seminole*. This Court should dismiss noneconomic damages predicated on the negligence claims.

**B. Noneconomic Damages Are Unavailable For Plaintiffs' Trespass Claim.**

This Court should also dismiss Plaintiffs' request for noneconomic damages for their trespass claim. FAC ¶¶ 269-275 (Count III). Every trespass claim requires showing that the defendant's trespass was "intentional." *Lakeside Village Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 36 (Tex. App.—El Paso 2017, pet. denied). But noneconomic damages are only available if a plaintiff makes a separate, heightened showing: that the trespass was "deliberate and willful." *See, e.g.*, *Coinmach*, 417 S.W.3d at 922 ("deliberate and willful"); *Cox*, 630 S.W.3d at 249 ("deliberate and willful"); *Lakeside Village*, 545 S.W.3d at 37 ("deliberate and willful"). That requires showing that the trespass was "intended and deliberately done," and merely being "aware of the dangers" or the "potential" for "adverse" effects is insufficient to show that a defendant "willfully and deliberately" caused the harms from the trespass. *Cox*, 630 S.W.3d at 249. And here, as SpaceX previously explained, Mot. 14-17, Plaintiffs have alleged that SpaceX was aware of the potential adverse effects, but they failed to adequately allege that SpaceX acted willfully and deliberately to cause Plaintiffs harm through trespass. Plaintiffs' contrary assertions fail and violate Texas precedent.

Plaintiffs try to distinguish *Cox*—which directly bars their noneconomic damages claims—but their attempts fail. Opp. 11. *Cox* rejected noneconomic damages for farmers alleging crop damage from aerial herbicide drift, and held that (1) noneconomic damages are unavailable unless the defendant acted "deliberate[ly] and willful[ly]," and (2) merely being "aware of the dangers of [chemical] drift and the potential for [the chemical] to drift in adverse conditions" was insufficient to show that the defendant "willfully and deliberately caused [the chemical] to drift onto [plaintiffs'] properties." *Cox*, 630 S.W.3d at 249. So too here. Awareness of the generalized risk of harm (*i.e.*, noise and acoustics) and proceeding with the conduct (*i.e.*, rocket launches) is insufficient to establish a "deliberate and willful" trespass. *Id.* Plaintiffs object that *Cox* was a summary judgment case, not a Rule 12 case. Opp. 11. But they miss the point. *Cox* made clear the applicable legal standard to recover noneconomic damages for trespass: that merely being "aware of the dangers" and "potential … adverse" effects was insufficient to establish that a defendant acted "willfully and deliberately" in trespassing and causing the harms. *Cox*, 630 S.W.3d at 249. True enough, this case is at the motion to dismiss—not motion for summary judgment—stage. But that does not relieve Plaintiffs of their burden, at this stage, to *plausibly allege* that SpaceX "willfully and deliberately" trespassed onto their properties. Plaintiffs also ask this Court to discount *Cox* because the Texas Supreme Court ultimately held for the defendants on other grounds and "had no occasion" to address noneconomic damages (which "plaintiffs did not challenge"). Opp. 11. But that is no basis to disregard the critical guidance from this "state appellate court[] decision," which is directly on point, recent, and reflects established Texas law. *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 483 (5th Cir. 2008) (deference to state decisions on state law); *Cox*, 630 S.W.3d at 249 (applying established Texas authorities, including *City of Tyler*, 962 S.W.2d at 496, *Petco*, 144 S.W.3d at 561-62, and *Seminole*

*Pipeline*, 979 S.W.2d at 753, and rejecting noneconomic damages).

Plaintiffs also purport to "accept" the "deliberate and willful" standard. Opp. 10-11. But, if so, they cannot "satisfy" it. They argue that SpaceX was "aware of the likelihood" that its rocket launches would cause noise and vibration harms to Plaintiffs' properties. But merely being "aware of the dangers" and "potential … adverse" effects is not enough for "willful[] and deliberate[]" misconduct under Texas's heightened standard. *Cox*, 630 S.W.3d at 249. They also repeat their arguments that SpaceX "intentionally and willfully opted to proceed" by continuing to launch after (a) "appraising and buying out neighbors" (that is false and does not show intent, *supra* Part II.A), and (b) "insuring against the very harm" (that shows regulatory compliance, *supra* Part II.A). Opp. 10. Leaving aside Plaintiffs' conclusory references to "intent" and "willfulness," all Plaintiffs have plausibly alleged is that SpaceX was "aware of the dangers" and the "potential" for "adverse conditions." *Cox*, 630 S.W.3d at 249. That falls far short of plausibly alleging that SpaceX "willfully and deliberately caused [the sounds and vibrations]" to damage "[plaintiffs'] properties." *Cox*, 630 S.W.3d at 249. And while Plaintiffs cite a few scattered and nonbinding cases, Opp. 7-8,[1] none compels noneconomic damages here, or overturns *Cox*'s on-point holding that noneconomic damages require more than showing the basic intentional, voluntary conduct required for any intentional tort, such as trespass, and instead require showing that the defendant

[1] *Reed* held that "psychological harm" was compensable for "intentional nuisance claims." *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 921-23, 926 (N.D. Tex. 2020). But as discussed above, Plaintiffs have not plausibly alleged facts showing intent for *any* tort theory. *Teledyne* authorized "mental anguish" for a trespasser's "intentional tort," *Teledyne Expl. Co. v. Klotz*, 694 S.W.2d 109, 111 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.), while *Kelly* authorized such damages for an "intentional and malicious" trespass, *Kelly Custom Homes, LLC v. Hopper*, No. 14-23-00793-CV, 2024 WL 3765393, at *1, *6 (Tex. App.—Houston [14th Dist.] Aug. 13, 2024, no pet.). But here, Plaintiffs do not allege the intentional or malicious trespass required by *Cox*'s on-point guidance—which instructs that the defendant must "willfully and deliberately" cause the damage. *Cox*, 630 S.W.3d at 249.

"willfully and deliberately" caused the damage. *Cox*, 630 S.W.3d at 249. Any noneconomic damages for the trespass claim must be dismissed.

**C. The Court Should Resolve Noneconomic Damages Now, On The Pleadings.**

Plaintiffs argue that noneconomic damages should not be resolved until summary judgment. Opp. 11-12. But courts regularly dismiss damages claims on the pleadings, where, as here, they are unsupported by the law. *See, e.g.*, *Aleman v. Abbott*, No. 3:06-cv-2208-B, 2007 WL 9717304, at *3 (N.D. Tex. Sept. 11, 2007) (dismissing exemplary damages); *Skinner v. Ard*, No. 19-66-JWD-EWD, 2020 WL 620790, at *10, *12 (M.D. La. Feb. 10, 2020) (dismissing damages category). Nothing Plaintiffs say warrants keeping their noneconomic damages in the case.

First, Plaintiffs argue that SpaceX's authorities are "summary-judgment case[s]," and "[that] posture makes all the difference." Opp. 11-12. But SpaceX cited these cases for their legal propositions, not the evidentiary standard. Mot. 9-17. Assuming Plaintiffs could prove all of their alleged facts, these cases show that their claim for noneconomic damages would still fail. The fact that in those Texas cases (applying Texas procedural rules) the defendants waited until summary judgment does not in any way lessen the binding legal rules those cases state, or provide any reason for this Court to stay its hand. *See, e.g.*, *Aleman*, 2007 WL 9717304, at *3 (dismissing damages); *Skinner*, 2020 WL 620790, at *10, *12 (same); S.H. b/n/f *Hart v. Midland Indep. Sch. Dist.*, No. 24-cv-00131-DC-RCG, 2025 WL 325270, at *1, *12 (W.D. Tex. Jan. 13, 2025) (recommending same).

Second, Plaintiffs argue that whether SpaceX acted with "ill-will" is a "fact question that cannot be resolved on the pleadings." Opp. 11-12. This attempt to skirt *Iqbal*/*Twombly* and avoid *Seminole*/*Petco* should be flatly rejected. *See, e.g.*, *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Courts regularly dismiss on the pleadings claims that insufficiently allege facts showing a

sufficient "state of mind." *Iqbal*, 556 U.S. at 683. Plaintiffs have not plausibly alleged (and cannot plausibly allege) that SpaceX "deliberately and willfully" trespassed on their land or "desire[d] to harm the plaintiff[s] personally." *Coinmach*, 417 S.W.3d at 922; *Seminole Pipeline*, 979 S.W.2d at 757.

Third, waiting until summary judgment will force the parties to undergo extensive and costly fact and expert discovery about Plaintiffs' alleged mental anguish, which is "easily fabricated and difficult to refute." *Seminole Pipeline*, 979 S.W.2d at 755. Dismissing the request for legally unavailable noneconomic damages now will avoid such substantial and unnecessary use of the parties' resources. *See* Fed. R. Civ. P. 1.

**D. Noneconomic Damages Should Be Dismissed With Prejudice.**

Plaintiffs finally argue that even if their complaint's request for noneconomic damages is dismissed, dismissal should be without prejudice and with leave to amend again. Opp. 14-15. While amendment is ordinarily freely allowed, "leave to amend is by no means automatic," and "decisions concerning motions to amend are entrusted to the sound discretion of the district court." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation modified). This Court "may consider a variety of factors in exercising its discretion," including "repeated failures to cure deficiencies by amendments previously allowed" and "futility of the amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Plaintiffs argue that they should get an opportunity to cure the complaint's deficiency. Opp. 14. But the prior amendments were "aimed specifically" at remedying the flaws SpaceX previously identified. Dkt. 25 at 1. Plaintiffs' failure to cure the deficiency, even with full awareness of SpaceX's argument, confirms the insufficiency. *See, e.g.*, *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (dismissal with prejudice where amendment futile). If anything,

Plaintiffs' request for noneconomic damages has even more flaws now—including because, in their briefing, Plaintiffs have made serious and repeated factual misstatements that cut against granting them (another) opportunity to amend. *See, e.g.*, *Jones*, 427 F.3d at 994 ("bad faith" and "dilatory motive").

## III. CONCLUSION

This Court should dismiss Plaintiffs' claim for noneconomic damages.

Dated: September 23, 2026

GIBSON, DUNN & CRUTCHER LLP

*/s/ John T. Cox III*
John T. Cox III
*Attorney-in-Charge*
Tx. Bar No. 24003722
S.D. Tex. Bar No. 27251
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: 346-718-6604
Facsimile: 346-718-6941
tcox@gibsondunn.com

Elizabeth K. McCloskey
(*pro hac vice*)
One Embarcadero Center,
Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
emccloskey@gibsondunn.com

Joseph D. Edmonds
(*pro hac vice*)
3161 Michelson Drive
Suite 1200
Irvine, CA 92612-4412
Telephone: (949) 451-3805
jedmonds@gibsondunn.com

Michael Rodriguez
Tx. Bar No. 00791553
S.D. Tex. Bar No. 18759
ATLAS HALL RODRIGUEZ
818 W. Pecan Blvd
McAllen, TX 78501
Telephone: (956) 574-9333
mrodriguez@atlashall.com

*Counsel for Space Exploration Technologies Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF (e-service) system.

*/s/ John T. Cox III*
John T. Cox III