**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JAZMIN AGUILAR, et al., | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 1:26-cv-00485 |
| | § | |
| VS. | § | Hon. Fernando Rodriguez, Jr. |
| | § | |
| SPACE EXPLORATION TECHNOLOGIES CORP., | § | |
| | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF ELIZABETH MCCLOSKEY IN SUPPORT OF DEFENDANT SPACEX'S MOTION FOR PROTECTIVE ORDER**

I, Elizabeth McCloskey, declare as follows:

1. I am a partner at the law firm Gibson, Dunn & Crutcher LLP. I am licensed to practice law in the state of California and have been admitted pro hac vice to the Southern District of Texas. I represent Space Exploration Technologies Corp. ("SpaceX") in this matter. I submit this declaration based upon my own personal knowledge. If called upon to do so, I could and would testify competently to the matters set forth herein.

2. Attached hereto as **Exhibit A** is a true and correct copy of the 16 interrogatories served upon SpaceX by Plaintiffs on July 24, 2026.

3. Attached hereto as **Exhibit B** is a true and correct copy of the 55 requests for production served upon SpaceX by Plaintiffs on July 24, 2026.

I declare under penalty of perjury that to the best of my knowledge and understanding, the statements in this declaration are true and correct.

Executed in San Francisco, California on October 22, 2026.

*<u>/s/ Elizabeth McCloskey</u>*
Elizabeth McCloskey

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JAZMIN AGUILAR, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-485 |
| | § | |
| SPACE EXPLORATION TECH. CORP., | § | |
| Defendant. | § | |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT**
**SPACE EXPLORATION TECHNOLOGIES CORPORATION**

Plaintiffs hereby serve their First Set of Interrogatories under Fed. R. Civ. P. 33 to Defendant Space Exploration Technologies Corporation.

**DEFINITIONS**

For the purpose of these Interrogatories, the following definitions shall apply, without regard to capitalization:

1. **"Acoustic Impacts"** means acoustic energy, continuous noise, vibrations, or impulsive noise including without limitation sonic boom air overpressure events generated by Defendant's Starship operations at Starbase.

2. "**All**" includes the collective as well as the singular and shall mean each, any, and every.

3. "**Any**" means one or more.

4. "**Communication**" means, without limitation, the conveyance (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) of information and includes,

without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "**Concerning**" means, without limitation, relating to, referring to, describing, evidencing, or constituting.

6. "**Defendant**," "**You**," and "**Your**" refer to Defendant Space Exploration Technologies, Corp. and all of its divisions, as well as successors, predecessors, current or former officers, directors, assigns, agents, attorneys, subsidiaries, employees, contractors, representatives, or any other person acting or purporting to act on its behalf.

7. "**Document**" or "**Documents**" mean all materials within the full scope of Fed. R. Civ. P. 34, including, but not limited to: all writings and recordings, including the originals, drafts, and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including, but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, interoffice and intra-office Communications, instant messages, chats, offers, notations of

any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, versions, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata.

8. "**Electronically Stored Information**," abbreviated as "ESI" has the same meaning and scope as it has in the Federal Rules of Civil Procedure.

9. "**Employee**" or "**Employees**" mean, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, independent contractor, agent, or other person who is or was employed or hired by Defendants.

10. **"FAA"** means the Federal Aviation Administration and includes any office, committee, subcommittee, advisory committee, and any agent, employee, or other individual acting as a representative of FAA.

11. "**Litigation**" means the above captioned matter.

12. "**Or**" and "**and**" should be construed to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," You should

produce all information about A and all information about B, as well as all information about A and B collectively. In other words, "or" and "and" should be read as and/or.

13. "**Relating to**," "**referring to**," "**regarding**," or "**with respect to**" mean, without limitation, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

14. **"Starbase"** means all property owned, leased, improved, or controlled by Defendant in Cameron County, Texas, in the municipality of Starbase (including areas formerly known as Boca Chica Village), including without limitation Defendant's Corporate Headquarters (1 Rocket Road, Starbase, TX 78521), Launch Site/Control Center (54298 Boca Chica Blvd, Starbase, TX 78521), Starfactory Manufacturing Site (52198 San Martin Blvd, Starbase, TX 78521), and satellite locations such as Massey's Test Site (1 Massey Way, Starbase, TX 78521).

## INSTRUCTIONS

For the purpose of these Interrogatories, the following instructions shall apply:

1. All answers are to be furnished in writing and under oath within thirty (30) days of the date of service of these Interrogatories.

2. Each Interrogatory shall be answered fully based upon your entire knowledge from all sources and all information in your possession or otherwise available, including

information from your officers, directors, employees, agents, representatives, attorneys, investigators, or consultants, and information that is known by each of them. An incomplete or evasive answer is a failure to answer.

3. Each Interrogatory is considered continuing, and if you obtain information that renders your response to one of them incomplete or inaccurate, you are obligated to serve amended answers on the undersigned.

4. If any Interrogatory may be answered fully by a Document, the Document may be attached in lieu of an answer if the Document is marked to refer to the Interrogatory to which it responds.

5. If You object to any of these Interrogatories, or any definition or instruction incorporated herein, state the reasons for Your objection with specificity and answer the Interrogatory to the extent it is not objectionable. If You file a timely objection to any portion of an Interrogatory, definition, or instruction, respond to the remaining portion.

6. If You refuse to answer an Interrogatory, in whole or part, for any reason, including, but not limited to any claim of privilege, clearly describe the asserted privilege or other grounds for refusing to answer with respect to the Interrogatory. If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not responding to an Interrogatory, or any part thereof, set forth in complete detail each and every fact, and the legal basis upon which the privilege is asserted, including sufficient

facts for the Court to make a full determination as to whether the claim of privilege is valid.

7. Identifying a person. When an Interrogatory asks You to "identify" a person, provide the information listed below, to the extent known, with respect to the person. Once a person has been identified in compliance with this paragraph, only the name of that person needs to be listed in response to later discovery requesting the identification of the person.

a. The person's full name;
b. Present or last known address;
c. Telephone number; and
d. The present, or last known place of employment and job title when referring to a natural person.

8. Identifying a Document. When an Interrogatory asks You to "identify" a Document, provide the information listed below, to the extent known, with respect to the Document. Once a Document has been identified in compliance with this paragraph, only the title or other abbreviated, clear identifier of the Document needs to be listed in response to later discovery requesting the identification of the Document.

a. The type of Document;
b. The general subject matter of the Document;
c. The date of the Document;
d. The names and addresses of the authors and recipients of the Document;
e. The location of the Document;
f. The identity of the person who has possession or control of the Document; and
g. Whether the Document has been destroyed, and if so (i) the date of its destruction, (ii) the reason for its destruction, (iii) the identity of the persons who destroyed it, and (iv) any retention policy directing its destruction.

9. Identifying a tangible thing. When an Interrogatory asks you to "identify" a tangible thing, provide the information listed below, to the extent known, with respect to the tangible thing.

a. The type of tangible thing;
b. The general description of the tangible thing;
c. The date of creation of the tangible thing;
d. The location of the tangible thing
e. The identity of the person who has custody of the tangible thing; and
f. Whether the tangible thing has been destroyed, and if so, (i) the date of its destruction, (ii) the reason for its destruction, (iii) the identity of the person who destroyed it, and (iv) any retention policy directing its destruction.

10. The Relevant period for each Interrogatory is January 1, 2018, through the present (the "Relevant Period"), unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If information prepared before the Relevant Period is necessary for a correct or complete understanding of any answer covered by an Interrogatory, You must include that information for the earlier or subsequent periods as well.

## INTERROGATORIES

**<u>INTERROGATORY NO. 1:</u>** Identify the Employee(s), along with their job title, who responded, or otherwise provided information for the purposes of responding to these Interrogatories

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 2:</u>** Identify all persons who substantially participated in the decision to dedicate the Starbase facility to the Starship program and identify any Acoustic Impacts or property-damage assessment evaluated in connection with that decision.

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 3:</u>** Identify each predictive computer model You used to estimate Acoustic Impacts from Starship operations, including RNoise and PCBoom. For each such model, identify the persons who substantially participated in selecting, operating, calibrating, validating, or using the model to establish or apply structural safety or damage thresholds.

**<u>RESPONSE:</u>**

**INTERROGATORY NO. 4:** Identify each investigation You conducted concerning the cause of the damage to the launch pad during the April 20, 2023 Starship test flight, including the date of the investigation and the identities of the persons who conducted it.

**RESPONSE:**

**INTERROGATORY NO. 5:** Identify all Documents and Communications that evaluate or establish the decision to attempt Starship or Super Heavy Return to Launch Site (RTLS) recoveries at Starbase for Flights 5, 7, and 8, and identify the persons who approved those mission profiles.

**RESPONSE:**

**INTERROGATORY NO. 6:** Identify every formal or informal claim, complaint, or communication received by You (including those sent to insurance@spacex.com) from any third party alleging structural property damage caused by Starship operations at Starbase, specifying the date of the claim, the property address, and whether You accepted liability, denied liability, or otherwise resolved the claim or complaint.

**RESPONSE:**

**<u>INTERROGATORY NO. 7:</u>** Do You contend that the continuous acoustic energy ($L_{max}$) generated during Starship operations at Starbase never exceeded 111 dB at any of Plaintiffs' properties at issue in this Litigation? If Your answer is anything other than an unqualified *no*, identify all factual bases for Your contention, including the identification of all acoustic measurements, data, or modeling on which You rely.

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 8:</u>** Do You contend that the impulsive sonic boom overpressures generated during Starship operations at Starbase never exceeded 6 psf at any of Plaintiffs' properties at issue in this Litigation? If Your answer is anything other than an unqualified *no*, identify all factual bases for Your contention, including the identification of all acoustic measurements, data, or modeling upon which You rely.

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 9:</u>** Identify the engineering reports, risk assessments, and Communications sent to or from SpaceX executive management or the FAA, created before April 20, 2023 that discuss, analyze, or evaluate any limitations, lack of empirical data, or potential inaccuracies in Your predictive acoustic modeling regarding the acoustic energy or sonic boom overpressures generated by Starship operations.

**<u>RESPONSE:</u>**

**INTERROGATORY NO. 10:** Identify by number or title which of the sixty-three corrective actions mandated by the FAA following the April 20, 2023 Starship test flight that mitigated, monitored, or addressed Acoustic Impacts or the risk of structural damage to third-party properties, and for each identified action, identify the principal compliance reports or certifications submitted to the FAA evidencing its implementation, as well as the persons primarily responsible for overseeing such implementation.

**RESPONSE:**

**INTERROGATORY NO. 11:** Do You contend that the water deluge system (or any other acoustic suppression system) constructed at Starbase reduced Acoustic Impacts at any of Plaintiffs' properties at issue in this Litigation compared to operations conducted without the system? If Your answer is anything other than an unqualified *no*, identify all factual bases for Your contention, including the identification of all acoustic measurements, comparative data, or engineering modeling on which You rely.

**RESPONSE:**

**INTERROGATORY NO. 12:** Identify the persons who authorized the decision to remove or omit the 111 dB ($L_{max}$) threshold and Table B-1 from Your August 2024 revised

Noise Assessment, and identify the principal Documents, internal Communications, or scientific studies relied on to justify that decision.

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 13:</u>** Identify the maximum continuous acoustic levels (measured in $L_{max}$) and the peak impulsive sonic boom overpressures (measured in psf or unweighted dB) recorded by You, or by any third-party monitoring on Your behalf, within the municipal boundaries of Port Isabel, South Padre Island, Laguna Vista, or Laguna Heights, or within a 12-mile radius of Starbase at any location within one mile of any of Plaintiffs' properties at issue in this Litigation during all Starship Flights to date. For each measurement identified, specify the exact location and placement of the sensor used to capture that measurement by providing its GPS coordinates or street address, the type of sensor, and the sensor's configuration used to capture the measurement.

**<u>RESPONSE:</u>**

**<u>INTERROGATORY NO. 14:</u>** Identify all instances of physical or structural damage (including but not limited to shattered windows, cracked masonry, or structural displacement) sustained by any SpaceX-owned or leased facilities, employee vehicles, or contractor properties located at or around Starbase (excluding the Launch Pad) resulting from Acoustic Impacts generated during Starship operations. For each instance

identified, identify the principal Documents (such as incident reports, work orders, or invoices) reflecting the damage and any subsequent repairs or reinforcements made to those structures.

**RESPONSE:**

**INTERROGATORY NO. 15:** Identify all persons who were primarily responsible for or substantially participated in the creation, calculation, review, or final approval of the predictive acoustic modeling, noise contours, and sonic boom overpressure estimates submitted to the FAA in Your 2021 Noise Assessment and Your August 2024 revised Noise Assessment. For each person identified, specify their specific role in the preparation of those assessments.

**RESPONSE:**

**INTERROGATORY NO. 16:** Identify the principal formal risk assessments, underwriting evaluations, or substantive Communications between You and Your insurance carriers, brokers, or underwriters regarding the specific risk of structural property damage or Acoustic Impacts to third-party residential properties in residential areas surrounding Starbase including without limitation Port Isabel, South Padre Island, Laguna Vista, and Laguna Heights.

**RESPONSE:**

Dated: July 24, 2026

Respectfully submitted,

**MARTINEZ & TIJERINA P.L.L.C**

/s/ Benigno Martinez
Benigno (Trey) Martinez (D. Tex. 23945)
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 550-4868
State Bar No. 00797011
trey@mbmtlawfirm.com

Richard M. Paul III (*pro hac vice* forthcoming)
Ashlea G. Schwarz (*pro hac vice* forthcoming)
Laurence O'Donnell (*phv* forthcoming)
**PAUL LLP**
601 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laurence@PaulLLP.com

**GUERRA LLP**

/s/ Francisco Guerra IV
Francisco "Frank" Guerra IV (Tex. Bar No. 00796684)
Jennifer A. Neal (Tex. Bar No. 2408934)
Bailey E. VanNatta (Tex. Bar No. 24119113)
875 E. Ashby Place, Suite 1200
San Antonio, Texas 78212
Telephone: (210) 447-0500
fguerra@guerrallp.com
jneal@guerrallp.com
bvannatta@guerrallp.com

Cristobal M. Galindo (Tex. Bar No. 24026128)
**Cristobal M. Galindo, PC**
4151 Southeast Freeway #602
Houston, Texas 77027
cmg@galindolaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served on the following counsel of record on this the 24th day of July 2026, as follows:

**GIBSON, DUNN & CRUTCHER LLP** *Via Email Service*
811 Main Street, Suite 3000
Houston, Texas 77002
JOHN T. COX III
Phone: 346-718-6604
Fax: 346-718-6941
tcox@gibsondunn.com

/s/ Francisco Guerra, IV.
Francisco Guerra, IV.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| JAZMIN AGUILAR, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-485 |
| | § | |
| SPACE EXPLORATION TECH. CORP., | § | |
| Defendant. | § | |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORPORATION**

Plaintiffs hereby serve this First Set of Requests for Production of Documents under Fed. R. Civ. P. 34 to Defendant Space Exploration Technologies Corporation.

**DEFINITIONS**

For the purpose of these Requests, the following definitions shall apply, without regard to capitalization:

1. **"Acoustic Impacts"** means acoustic energy, continuous noise, vibrations, or impulsive noise including without limitation sonic boom air overpressure events generated by Defendant's Starship operations at Starbase.

2. "**All**" includes the collective as well as the singular and shall mean each, any, and every.

3. "**Any**" means one or more.

4. "**Communication**" means, without limitation, the conveyance (in the form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) of information and includes,

without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "**Concerning**" means, without limitation, relating to, referring to, describing, evidencing, or constituting.

6. "**Defendant**," "**You**," and "**Your**" refer to Defendant Space Exploration Technologies, Corp. and all of its divisions, as well as successors, predecessors, current or former officers, directors, assigns, agents, attorneys, subsidiaries, employees, contractors, representatives, or any other person acting or purporting to act on its behalf.

7. "**Document**" or "**Documents**" mean all materials within the full scope of Fed. R. Civ. P. 34, including, but not limited to: all writings and recordings, including the originals, drafts, and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including, but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, interoffice and intra-office Communications, instant messages, chats, offers, notations of

any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, versions, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata.

8. "**Electronically Stored Information**," abbreviated as "ESI" has the same meaning and scope as it has in the Federal Rules of Civil Procedure.

9. "**Employee**" or "**Employees**" mean, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger, independent contractor, agent, or other person who is or was employed or hired by Defendants.

10. **"FAA"** means the Federal Aviation Administration and includes any office, committee, subcommittee, advisory committee, and any agent, employee, or other individual acting as a representative of FAA.

11. "**Litigation**" means the above captioned matter.

12. "**Or**" and "**and**" should be construed to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," You should

produce all information about A and all information about B, as well as all information about A and B collectively. In other words, "or" and "and" should be read as and/or.

13. "**Relating to**," "**referring to**," "**regarding**," or "**with respect to**" mean, without limitation, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

14. **"Starbase"** means all property owned, leased, improved, or controlled by Defendant in Cameron County, Texas, in the municipality of Starbase (including areas formerly known as Boca Chica Village), including without limitation Defendant's Corporate Headquarters (1 Rocket Road, Starbase, TX 78521), Launch Site/Control Center (54298 Boca Chica Blvd, Starbase, TX 78521), Starfactory Manufacturing Site (52198 San Martin Blvd, Starbase, TX 78521), and satellite locations such as Massey's Test Site (1 Massey Way, Starbase, TX 78521).

## INSTRUCTIONS

For the purpose of these Requests, the following instructions shall apply:

1. Provide a complete written answer to each Request.

2. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests are continuing in nature, so that, if You, or any of Your directors, officers, Employees, agents, or representatives or any other person acting on Your behalf, subsequently discover or

obtain possession, custody, or control of any Document or ESI previously requested or required to be produced, You shall make such Documents or ESI available within seven (7) days of discovery or obtaining possession. Similarly, any information or Documents provided in response to these Requests that is later found to be incorrect, or to have become incomplete or incorrect because of changed circumstances, should be completed or corrected by means of a supplemental response.

3. In producing Documents, furnish all Documents or things in Your possession, custody, or control, regardless of the physical location of the Documents, or whether such Documents or other materials are possessed directly by You.

4. If You object to any of these Requests, or any definition or instruction incorporated herein, state the reasons for Your objection with specificity and answer the Request to the extent it is not objectionable. If You file a timely objection to any portion of a Request, definition, or instruction, respond to the remaining portion.

5. If You refuse to answer a Request, in whole or part, for any reason, including, but not limited to, any claim of privilege, clearly describe the asserted privilege or other grounds for refusing to answer with respect to the Request. If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not responding to a Request, or any part thereof, set forth in complete detail each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid. Produce any purportedly privileged

Document containing non-privileged material with only the purportedly privileged portion redacted. With respect to a Document to which a privilege is being claimed, provide the following information at a minimum: (1) date; (2) author; (3) names of any persons who received copies, if any; (4) title; (5) type of Document or tangible thing; and (6) a description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information).

6. Produce the original of each Document requested, together with all non-identical copies and drafts of the Document. If the original of any Document cannot be located, produce a legible copy bound or stapled in the same manner as the original.

7. Produce all Documents not otherwise responsive to these Requests that mention, discuss, refer to, or explain any responsive Document that is, or are attached to a responsive Document, including routing slips, transmittal memoranda, letters, cover sheets, comments, evaluation, or similar materials.

8. Produce all Documents in the same order as they are kept or maintained by You in the ordinary course of Your business. For any Document that has been removed from a file for purposes of producing the Document in response to these Requests, identify the file from which the Document was removed.

9. Documents attached to each other should not be separated, including, but not limited to, hard-copy versions of Documents attached to hard-copy printouts of e-mails produced pursuant to these Document Requests.

10. If a Document once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the Document and state the details concerning its loss.

11. The Relevant Period for each Request is January 1, 2018 through the present, unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the Relevant Period. If information prepared before the Relevant Period is necessary for a correct or complete understanding of any answer covered by a Request, You must include that information for the earlier or subsequent periods as well.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION 1:** Your organizational charts, corporate hierarchy diagrams, and department rosters for Starbase operations during the Relevant Period including without limitation any charts identifying the chain of command for environmental compliance and facility management.

**RESPONSE:**

**REQUEST FOR PRODUCTION 2:** All Documents You identified in or relied on in answering Plaintiffs' interrogatories and preparing Your Rule 26 disclosures, including any supplemental answers or disclosures.

**RESPONSE:**

**<u>REQUEST FOR PRODUCTION 3:</u>** All witness statements, declarations, affidavits, or similar documents You have obtained or received regarding this Litigation.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION 4:</u>** Documents from the personnel files for all witnesses disclosed in Your Rule 26 disclosures, including any supplemental Rule 26 disclosures, concerning performance evaluations, disciplinary records, training records, Acoustic Impacts, environmental compliance, or Starship operations.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION 5:</u>** All Documents identified in Your responses to Plaintiffs' First Set of Interrogatories.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION 6:</u>** All insurance policies You believe may cover any part of the claims at issue in this Litigation, including any self-insured policies; Documents sufficient to reflect any refusal or denial of coverage, any reservation of rights, any claims, or any payments on such policy(ies); and all formal risk assessments, underwriting evaluations, or substantive Communications with Your insurance carriers,

brokers, or underwriters regarding the risk of structural property damage or Acoustic Impacts to property.

**RESPONSE:**

**REQUEST FOR PRODUCTION 7:** All Documents You have obtained by subpoena for any subpoena issued in this Litigation.

**RESPONSE:**

**REQUEST FOR PRODUCTION 8:** Your Document retention and destruction policies in effect at any time during the Relevant Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION 9:** All training materials, manuals, policies, or instructions provided to Your Employees regarding the measurement, monitoring, or mitigation of Starship's Acoustic Impacts.

**RESPONSE:**

**REQUEST FOR PRODUCTION 10:** All Documents that discuss, concern, identify, relate, or refer to the education, training, or supervision of Your Employees related to

assessing, responding to, or tracking complaints of Acoustic Impacts, including but not limited to structural damage to property surrounding Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 11:** Documents reflecting specific engineering, operational, or design modifications implemented by You (such as the water deluge system, adjustments to the launch pad, flight trajectory adjustments, changes in engine testing methods) for the purpose of mitigating Starship's Acoustic Impacts on the residential communities surrounding Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 12:** Documents regarding Your monitoring of Starship's Acoustic Impacts, including any and all versions of any policies or protocols related to such monitoring at or around Starbase, and including all metrics used to monitor and measure Acoustic Impacts such as Lmax, psf, dB, and the like.

**RESPONSE:**

**REQUEST FOR PRODUCTION 13:** All incident reports, engineering evaluations, and Communications (expressly including all emails sent to or from insurance@spacex.com) constituting or reflecting Your investigation of complaints

regarding Acoustic Impacts or structural property damage from residents or third-party property owners in Port Isabel, South Padre Island, Laguna Vista, and Laguna Heights.

**RESPONSE:**

**REQUEST FOR PRODUCTION 14:** All acoustic, seismic, and/or blast-impact assessments, models, predictions, or studies evaluating the impact of Starship operations on residential structures in Port Isabel, South Padre Island, Laguna Vista, or Laguna Heights, including all Documents and Communications concerning the creation, methodology, review, or results of those assessments, models, predictions, or studies.

**RESPONSE:**

**REQUEST FOR PRODUCTION 15:** All acoustic, seismic, or vibration data captured during Starship static engine tests, launches, and landings at Starbase, including all raw sensor data, recordings, output logs, metadata, sensor configuration files, calibration records, and Documents reflecting the precise placement and GPS coordinates of each sensor, as well as all Documents and Communications analyzing, summarizing, or discussing this captured data.

**RESPONSE:**

**REQUEST FOR PRODUCTION 16:** All Documents reflecting Your efforts, if any, to communicate with the public, local residents, community groups, or individuals who live, work, or attend school in Port Isabel, South Padre Island, Laguna Vista, or Laguna Heights regarding Acoustic Impacts, Acoustic Impacts monitoring results, and the potential risks of structural property damage generated by Starship operations. This request explicitly includes Communications concerning public-facing websites, community portals, or social media accounts (including but not limited to official SpaceX updates) used to disseminate information, warnings, or notices to these communities.

**RESPONSE:**

**REQUEST FOR PRODUCTION 17:** Documents and Communications regarding Your FAA inspections, potential violations, required corrective actions, or actual violations related to Starship operations at Starbase, including but not limited to the sixty-three corrective actions required by the FAA following the April 20, 2023 test flight.

**RESPONSE:**

**REQUEST FOR PRODUCTION 18:** All policies regarding internal and external reporting on unplanned acoustic anomalies, explosive failures, excessive vibration events, launch pad damage, or property damage resulting from Starship operations at Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 19:** Documents reflecting any noise assessment, acoustic evaluation, or structural damage risk assessment conducted by You or on Your behalf regarding Starship operations at Starbase, specifically including all drafts and final versions of the 2021 Noise Assessment, the August 2024 revised Noise Assessment, and all subsequent Noise Assessments or structural damage risk assessments. This request includes both internal assessments and assessments conducted by consultants hired by, or on behalf of, You.

**RESPONSE:**

**REQUEST FOR PRODUCTION 20:** Copies of all launch licenses, permits, and any amended permits or licenses, whether issued by the FAA or any other regulatory agency, regarding Starship operations at Starbase, including the construction of the Orbital Launch Mounts, integration/catch towers, sound suppression systems, or any other equipment, devices, or designs intended to mitigate Starship's Acoustic Impacts.

**RESPONSE:**

**REQUEST FOR PRODUCTION 21:** All Communications with, meeting notes involving, or Documents submitted to, any regulatory agency (including without

limitation the FAA, the Texas Commission on Environmental Quality (TCEQ), and the Texas General Land Office (GLO)) concerning the Acoustic Impacts, noise regulations, or structural damage risks associated with Starship operations at Starbase. This request explicitly includes but is not limited to all Acoustic Impacts data, sonic boom overpressure logs, or potential structural damage analyses or reports submitted to the FAA, as well as Your internal review, analyses, or responses to the FAA's environmental assessments and the FAA's responses to Your 2021 and 2024 Noise Assessments.

**RESPONSE:**

**REQUEST FOR PRODUCTION 22:** Documents that discuss, concern, identify, relate, or refer to the propagation, travel, or movement of Starship's Acoustic Impacts, including Documents regarding research and test results on modeling airborne and ground-borne acoustic energy.

**RESPONSE:**

**REQUEST FOR PRODUCTION 23:** All input, output, reports, and native data files for the RNoise, PCBoom, or any other acoustic modeling software systems used by You to predict Starship's Acoustic Impacts or third-party structural damage risks. This request explicitly includes all software parameters, environmental variable inputs, and digital simulation files used in the creation of Your 2021 and 2024 Noise Assessments.

**RESPONSE:**

**REQUEST FOR PRODUCTION 24:** Documents reflecting any outside consultants, acoustic engineers, or researchers hired or retained by You, or acting on Your behalf, to evaluate the acoustic, seismic, or blast-impact profile of Starship operations at Starbase, or to evaluate the risk of structural damage to surrounding properties. This request includes, but is not limited to, retention agreements, contracts, e-mails, consulting agreements, correspondence, final reports, and invoices.

**RESPONSE:**

**REQUEST FOR PRODUCTION 25:** Documents reflecting any study, article, report, or other writing financed in whole, or in part, by You, regarding the generation, propagation, or impacts of Starship's Acoustic Impacts or similar Acoustic Impacts of other heavy-lift launch vehicles.

**RESPONSE:**

**REQUEST FOR PRODUCTION 26:** Documents reflecting formal literature reviews, white papers, or internal presentations conducted by Your Employees of scientific literature regarding rocket acoustics, continuous noise, impulsive noise, sonic booms, aeroacoustic phenomena, or structural damage thresholds related to launch vehicles.

**RESPONSE:**

**REQUEST FOR PRODUCTION 27:** Documents reflecting Your Communications with the Commercial Spaceflight Federation, the American Institute of Aeronautics and Astronautics (AIAA), or any other aerospace industry groups or trade associations regarding the Acoustic Impacts generated by launch vehicles, as well as any associated risks to surrounding communities.

**RESPONSE:**

**REQUEST FOR PRODUCTION 28:** Documents related to any financial support provided by, or on behalf of, You to the Commercial Spaceflight Federation, the American Institute of Aeronautics and Astronautics (AIAA), or any other aerospace industry group or task force concerning Acoustic Impacts or noise regulations related to rocket operations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 29:** All Communications with Cameron County officials, local municipalities (including without limitation Port Isabel, South Padre Island, Laguna Vista, and Laguna Heights), or local law enforcement regarding Acoustic Impacts from Starship operations, explicitly including any complaints, notices, or

discussions concerning Acoustic Impacts, noise limit violations, or structural property damage.

**RESPONSE:**

**REQUEST FOR PRODUCTION 30:** All deposition transcripts, trial transcripts, and final expert witness reports from any prior or concurrent litigation, arbitration, or formal administrative proceeding concerning Acoustic Impacts, nuisance, trespass, or structural property damage resulting from SpaceX rocket engine testing, launches, or landings.

**RESPONSE:**

**REQUEST FOR PRODUCTION 31:** All executive summaries, agendas, meeting minutes, and other Documents created for, presented to, or supplied to the participants in the meetings of Your board of directors or any executive committees regarding Starship's Acoustic Impacts, including without limitation any risk or liability for structural damage to surrounding properties.

**RESPONSE:**

**REQUEST FOR PRODUCTION 32:** Documents, if any, regarding Your field testing, measurement, or physical recording of continuous launch noise (including $L_{max}$) or sonic boom overpressures (including psf) generated by Starship operations in residential

communities surrounding Starbase including Port Isabel, South Padre Island, Laguna Vista, and Laguna Heights.

**RESPONSE:**

**REQUEST FOR PRODUCTION 33:** Documents regarding Your calculation of the levels of continuous launch noise ($L_{max}$) or sonic boom overpressures (psf) reported to the FAA, regulators, or the public, including the data, variables, and formulas underlying those calculations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 34:** Documents and Communications regarding Your testing, measurement, or monitoring of acoustic energy, vibrations, and exhaust plumes specifically generated at the Starbase Launch Pad and Massey's Test Site.

**RESPONSE:**

**REQUEST FOR PRODUCTION 35:** Documents and Communications regarding the National Oceanic and Atmospheric Administration's (NOAA) "Overpressure Levels of Concern," including any Documents or Communications analyzing, discussing, or otherwise relating to the 0.04 psi (5.76 psf) threshold for sonic boom glass failure as it relates to Starship operations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 36:** Documents and Communications regarding any industry or government acoustic standard You relied on in analyzing Starship's Acoustic Impacts and potential third-party structural damage including without limitation the U.S. Department of the Air Force, NASA, the FAA, or the U.S. Bureau of Mines (USBM) RI-8485 acoustic hazard standards or significance thresholds for structural damage (including but not limited to the 1 claim per 1,000 households for $L_{max}$ > 110 dB threshold), including any Documents or Communications analyzing, discussing, or otherwise relating to these standards in the context of Starship operations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 37:** Documents and Communications regarding independent acoustic research or studies of Starship operations, including but not limited to the acoustic data and findings published by researchers from Brigham Young University (BYU) regarding Test Flights 5 and 6, and any Documents regarding Your review, analysis, or response to such findings.

**RESPONSE:**

**REQUEST FOR PRODUCTION 38:** All Documents and Communications regarding any industry or government acoustic standard or study You relied on in analyzing Starship's Acoustic Impacts and potential third-party structural damage, including the impulsive noise criteria set forth in Richard Fenton & Ray Methold, *MOD Shoeburyness & Pendine Noise and Vibration Study: Criteria for the Assessment of Potential Building Damage Effects from Range Activities* (2016). This request includes all internal reviews, analyses, or Communications discussing the applicability of this study's thresholds to the Acoustic Impacts generated by Starship operations at Starbase, as well as Your decision to rely on this study in the 2024 Noise Assessment.

**RESPONSE:**

**REQUEST FOR PRODUCTION 39:** Documents and Communications regarding the acoustic impacts and structural damage risks associated with the Starship vehicle's or Super Heavy booster's return and landing burns, including any Documents regarding Your review, analysis, or response to findings that the booster's landing burn generates continuous maximum noise levels on par with the initial liftoff.

**RESPONSE:**

**REQUEST FOR PRODUCTION 40:** Documents and Communications regarding the damage to the Orbital Launch Pad during the April 20, 2023 Starship test flight, including

any Documents regarding Your review, analysis, or response to the magnitude of acoustic energy generated during that liftoff and the subsequent rebuilding of the damaged launch pad with installation of a new water deluge acoustic energy suppression system.

**RESPONSE:**

**REQUEST FOR PRODUCTION 41:** Documents and Communications regarding Your August 2024 revised Noise Assessment, including any Documents or Communications discussing, analyzing, or explaining Your decision to revise, omit, or alter structural damage thresholds for continuous noise ($L_{max}$) or sonic boom overpressures (psf) that were previously present in Your 2021 Noise Assessment (including the omission of Table B-1).

**RESPONSE:**

**REQUEST FOR PRODUCTION 42:** Documents sufficient to show the design specifications, acoustic tolerances, thrust parameters, and mechanical power and acoustic energy output for the Raptor engines utilized during the Starship test flights at Starbase, explicitly including the Raptor 1, Raptor 2, and Raptor 3 engines, and any experimental engine configurations that have been used or tested in Starbase operations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 43:** Documents sufficient to reflect the total number, dates, and durations of all static engine tests, test flights, and fully integrated Starship/Super Heavy test flights conducted at Starbase including Massey's Test Site for the Relevant Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION 44:** Documents sufficient to reflect the total thrust generated, the number of Raptor engines ignited, the version of Raptor engines used, the throttle percentages, and the mission profiles for each Starship and/or Super Heavy test flight or static engine test conducted at Starbase including Massey's Test Site.

**RESPONSE:**

**REQUEST FOR PRODUCTION 45:** All Documents that discuss, concern, identify, relate, or refer to any Communications You had with any manufacturer, dealer, or supplier of the acoustic monitoring devices, seismographs, or other sensor equipment You used to measure Acoustic Impacts at Starbase and in residential communities surrounding Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 46:** Documents sufficient to reflect the date, amount, and reason for any fines, penalties, or settlements You paid to any federal, state, or local government agency (including without limitation the FAA and Cameron County) for violations related to Starship operations at Starbase (including without limitation violations of launch licenses, environmental permits, or noise ordinances or limitations).

**RESPONSE:**

**REQUEST FOR PRODUCTION 47:** All Communications between You and any public relations or consulting firms regarding the Acoustic Impacts or property damage complaints associated with Starship operations at Starbase. This request includes without limitation the following types of documents: engagement letters, contracts, documents defining the nature and purpose of the engagement(s), work plans, deliverables, draft communications, budgets, assessments of activities completed, reviews of work product and accomplishments, if any.

**RESPONSE:**

**REQUEST FOR PRODUCTION 48:** Communications between You and any lobbying or governmental relations firm(s) regarding the regulation of Acoustic Impacts, environmental approvals, or FAA launch licensing for Starship operations at Starbase. This request includes, but is not limited to, the following types of documents:

engagement letters, contracts, documents defining the nature and purpose of the engagement(s), work plans, deliverables, draft communications, budgets, assessments of activities completed, reviews of work product and accomplishments, if any.

**RESPONSE:**

**REQUEST FOR PRODUCTION 49:** Communications between You and Your shareholders, investors, or prospective investors regarding any risk or liability associated with Acoustic Impacts or third-party property damage claims resulting from Starship operations at Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 50:** Documents and Communications comparing, analyzing, or discussing the use of alternative launch sites, alternative flight profiles, or alternative acoustic and blast mitigation systems (such as flame deflectors or water deluge systems) intended to reduce Starship's Acoustic Impacts.

**RESPONSE:**

**REQUEST FOR PRODUCTION 51:** Documents sufficient to show the revenues, profits, overall valuation, and financial projections associated with the Starship program and Your operations at Starbase, including any Documents, financial disclosures, or

Documents prepared by or for potential or actual underwriters or investors prepared in connection with Your initial public offering (IPO) preparations.

**RESPONSE:**

**REQUEST FOR PRODUCTION 52:** All Documents or Communications that discuss, concern, identify, relate, or refer to flight restrictions, noise level caps, exclusion zones, or operational limits imposed or proposed by any regulatory agency or local government regarding Starship operations at Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 53:** All Documents, including any formal or informal agreements, with the FAA, the Texas Commission on Environmental Quality (TCEQ), Cameron County, or any other government agency to restrict, limit, or modify Your launch cadence, engine testing, or acoustic output at Starbase.

**RESPONSE:**

**REQUEST FOR PRODUCTION 54:** Produce Documents reflecting any analysis performed by You quantifying the risk of structural damage (including but not limited to window breakage, plaster cracking, interior and exterior wall damage, ceiling damage,

driveway and sidewalk cracking, or foundation damage) to third-party properties exposed to Starship's Acoustic Impacts.

**RESPONSE:**

**REQUEST FOR PRODUCTION 55:** Produce all Documents or Communications comparing, analyzing, or discussing the operational cost-savings of Starship's Return to Launch Site (RTLS) recovery maneuvers against the potential financial liability for structural property damage to third parties caused by the RTLS Acoustic Impacts.

**RESPONSE:**

Dated: July 24, 2026

Respectfully submitted,

**MARTINEZ & TIJERINA P.L.L.C**

/s/ *Benigno Martinez*
Benigno (Trey) Martinez (D. Tex. 23945)
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 550-4868
State Bar No. 00797011
trey@mbmtlawfirm.com

Richard M. Paul III (*pro hac vice* forthcoming)
Ashlea G. Schwarz (*pro hac vice* forthcoming)
Laurence O'Donnell (*phv* forthcoming)
**PAUL LLP**
601 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laurence@PaulLLP.com

**GUERRA LLP**

/s/ *Francisco Guerra IV*
Francisco "Frank" Guerra IV (Tex. Bar No. 00796684)
Jennifer A. Neal (Tex. Bar No. 2408934)
Bailey E. VanNatta (Tex. Bar No. 24119113)
875 E. Ashby Place, Suite 1200
San Antonio, Texas 78212
Telephone: (210) 447-0500
fguerra@guerrallp.com
jneal@guerrallp.com
bvannatta@guerrallp.com

Cristobal M. Galindo (Tex. Bar No. 24026128)
**Cristobal M. Galindo, PC**
4151 Southeast Freeway #602
Houston, Texas 77027
cmg@galindolaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served on the following counsel of record on this the 24th day of July 2026, as follows:

**GIBSON, DUNN & CRUTCHER LLP** *Via Email Service*
811 Main Street, Suite 3000
Houston, Texas 77002
JOHN T. COX III
Phone: 346-718-6604
Fax: 346-718-6941
tcox@gibsondunn.com

/s/ *Francisco Guerra, IV.*
Francisco Guerra, IV.