UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAZMIN AGUILAR, *et al.*,<br>*Plaintiffs,* | §<br>§<br>§ | |
| v. | § | Civil Action No. 1:26-cv-00485 |
| | §<br>§ | |
| SPACE EXPLORATION TECHNOLOGIES CORPORATION,<br>*Defendant.* | §<br>§<br>§ | |

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION TO DEFENDANT SPACEX'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR NONECONOMIC DAMAGES**

COME NOW Plaintiffs and file this Amended Response in Opposition to Defendant's Second Motion to Dismiss Plaintiffs' Claims for Noneconomic Damages (the "Motion").[1] For the reasons set forth below, the Motion should be denied in its entirety.

## I. SUMMARY OF THE ARGUMENT

This is a motion to dismiss, not a motion for summary judgment. Yet SpaceX asks the Court to weigh evidence, draw inferences in its own favor, and resolve its own state of mind against Plaintiffs—all on the pleadings. Texas law does not bar mental-anguish damages whenever an injury touches property; it denies them for negligent property

[1] SpaceX requested that Plaintiffs clarify the language regarding the areas where it bought out people's homes before it began launching. This amended opposition does so in the last sentence on pages 9 and 12 respectively. SpaceX consented, in writing, to the filing of this amended pleading.

damage, *City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex. 1997), but allows them when the harm is inflicted intentionally, *Teledyne Expl. Co. v. Klotz*, 694 S.W.2d 109, 111 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). A defendant acts intentionally when it knows the invasion is "substantially certain to result." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 605 (Tex. 2016) (internal quotation marks and citation omitted). The First Amended Complaint alleges just that: knowing its launches were substantially certain to drive structure-damaging noise, vibration, and sonic booms into Plaintiffs' homes, SpaceX launched them again and again. (Dkt. 23 ¶¶ 95–97, 271–72). Those allegations must be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The reason the Motion fails is straightforward. Plaintiffs do not rest on the bare label "intentional." They allege that, years before the flights at issue, SpaceX appraised and offered to buy homes nearby its launch site because it knew its launches would damage them (Dkt. 23 ¶95); that it carried FAA-mandated insurance against that damage (*Id.* at ¶96); and that it later scrubbed the adverse acoustic thresholds from its own public filings (*Id.* at ¶¶ 76, 85). Those allegations permit a straightforward inference: SpaceX knew its acoustic intrusions were substantially certain to reach Plaintiffs' homes, and it launched anyway. *See Crosstex,* 505 S.W.3d at 605. SpaceX's own authority does not compel dismissal: its lead cases were decided on summary judgment, after discovery, not on the pleadings. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 911 (Tex. 2013); *Cox v. Helena Chem. Co.*, 630 S.W.3d 234, 245–46 (Tex. App.—Eastland 2020), *aff'd in*

*part, rev'd in part,* 664 S.W.3d 66 (Tex. 2023). And its Request for Judicial Notice asks the Court to resolve a disputed fact against Plaintiffs, which Rule 12 forbids. At a minimum, Plaintiffs should have leave to replead.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the complaint, not the proof. To survive one, Plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim crosses that threshold when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). At this stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to Plaintiffs. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). Plausibility is not probability. The standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but it demands nothing more. *Iqbal*, 556 U.S. at 678; *accord Matter of KP Eng'g, L.P.*, 63 F.4th 452, 456 (5th Cir. 2023). The question is not whether Plaintiffs will ultimately prevail, but whether they have stated a claim.

SpaceX calls Plaintiffs' intent allegations "conclusory." (Dkt. 29 at 9, 19, 22). That label misreads both the rule and the record. Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). That allowance does not bless bare labels: a plaintiff must still plead factual

content from which the required state of mind may plausibly be inferred. *Iqbal*, 556 U.S. at 686–87. But it excuses Plaintiffs from pleading intent with particularity, and it forecloses SpaceX's demand that they prove its state of mind on the pleadings. And Plaintiffs have pleaded far more than a label. They allege concrete, pre-launch conduct—appraisals and buyout offers, FAA-mandated damage insurance, and the deletion of adverse acoustic thresholds from SpaceX's own filings—from which knowledge is the natural inference. (Dkt. 23 ¶¶ 85, 95–96). Whether SpaceX in fact held that knowledge is a question for summary judgment or trial, not a motion to dismiss.

## III. BACKGROUND

This case is about rocket noise on an unprecedented scale. At its Starbase facility in Cameron County, SpaceX manufactures, tests, launches, and lands Starship. (Dkt. 23 ¶1). The vehicle stands 403 feet tall and, through thirty-three Raptor engines, generates 16.7 million pounds of thrust—nearly twice NASA's Space Launch System and roughly ten times SpaceX's own Falcon 9. (*Id.* ¶¶ 66–68). SpaceX built that infrastructure "mere miles from coastal residential communities," to support what Plaintiffs describe as "the most energetically violent and acoustically severe rocket launches in human history." (*Id.* ¶65). Between April 2023 and October 2025, SpaceX conducted eleven fully integrated Starship test flights there. (*Id.* at ¶3). Plaintiffs are "innocent bystanders" whose homes "are being damaged knowingly, willfully, and repeatedly" by the resulting noise, vibrations, and sonic booms. (*Id.* at ¶2).

Two kinds of acoustic energy from these launches can damage a building, and the thresholds are not Plaintiffs' invention. They come from SpaceX and its regulator. The first is continuous launch noise, measured in maximum unweighted decibels ($L_{max}$); the second is the impulsive overpressure of a sonic boom, measured in pounds per square foot (psf). (Dkt. 23 at ¶¶ 72–73, 80). For continuous noise, the recognized threshold for potential structural damage begins at $L_{max}$ values above 110 dB. (*Id.* at ¶78). SpaceX said as much in its own 2021 Noise Assessment to the FAA, reporting that "approximately one damage claim will result per 100 households exposed at 120 dB and one damage claim per 1,000 households exposed at 111 dB." (*Id.* at ¶74). For sonic booms, the FAA has explained that "the threshold for building damage due to sonic booms is 2 psf," and that "[a]t 10 psf, the probability of glass breakage is between one in 100 and one in 1,000." (*Id.* at ¶82). An independent federal standard fixes "sonic boom glass failure" at 5.76 psf. (*Id.* at ¶84). These are the yardsticks SpaceX itself brought to the launchpad.

This is not conjecture. Independent scientists have measured these launches, and the readings cross SpaceX's own thresholds in Plaintiffs' communities. During Test Flight 5, researchers from Brigham Young University recorded continuous-noise ($L_{max}$) levels exceeding the 110 dB structural-damage threshold at every measuring station. (Dkt. 23 at ¶88). The sonic-boom readings were worse: at Port Isabel and the south end of South Padre Island—where Plaintiffs live—overpressures reached "near and exceeding 10 psf," posing what the researchers called a "greater risk of structural damage, such as glass

breaking and falling bric-a-brac." (*Id.* at ¶89). Test Flight 6 confirmed the pattern, with $L_{max}$ readings above 120 dB at six miles from the pad and above the 110 dB threshold well past twelve. (*Id.* at ¶92). And because the booster's acoustic signature held constant across the campaign, all eleven launches are alleged to have driven damaging continuous noise into the communities where Plaintiffs reside. (*Id.* at ¶93).

What sets this case apart is what SpaceX knew before it ever lit an engine. As early as 2019—years before the flights at issue—SpaceX hired the real-estate firm Jones Lang LaSalle to appraise the homes of Boca Chica Village "because it knew its Starship launches were going to cause property damage," then offered to buy those homes at roughly three times their market value, telling residents it "has become clear" that its activities would "make it increasingly more challenging to minimize disruptions to residents." (Dkt. 23, ¶95). It bought FAA-mandated liability insurance to cover the very third-party property damage it anticipated. (*Id.* at ¶96). Its CEO had already brushed the risk aside in 2018, saying of the Brownsville site, "we've got a lot of land with nobody around, so if it blows up, it's cool"—except that Plaintiffs' homes sat on that land. (*Id.* at ¶97). And when its own flight data confirmed the danger, SpaceX did not stop; it dropped the adverse 111 dB threshold from its 2024 assessment and recalibrated its public numbers to manufacture "plausible deniability." (*Id.* at ¶¶ 76, 85). SpaceX thus knew—from its appraisals, its insurance, and its own data—that its launches would send damaging noise and overpressure into Plaintiffs' homes. It launched anyway, at least

eleven times.

The result is the harm at the center of this case. Each Plaintiff alleges that his or her home was damaged by SpaceX's launches on at least eleven identified dates between April 2023 and October 2025, and that those launches caused both economic and non-economic loss. (*See, e.g.*, Dkt. 23, ¶¶ 255–56). Plaintiffs bring three claims: negligence, gross negligence, and trespass. (*Id.* at ¶¶ 257–75). On the gross-negligence and trespass counts, they seek "special, non-economic damages for mental anguish caused by the severe and repeated acoustic trauma inflicted upon their homes." (*Id.* at ¶¶ 268, 275). SpaceX does not move against the claims themselves. It moves only to strike the mental-anguish damages as unavailable under Texas law. (Dkt. 29 at 1). It is wrong.

## IV. ARGUMENT & AUTHORITIES

### A. Mental-Anguish Damages Are Recoverable for Intentional Torts Under Texas Law.

Texas law draws a sharp line between negligent and intentional harm to property. For negligent damage, mental-anguish damages are unavailable. *City of Tyler v. Likes*, 962 S.W.2d 489, 497 (Tex. 1997). But the Court pointedly reserved the other side of the line, declining to decide "whether mental anguish arising out of property damage may be legally compensable when a heightened degree of misconduct is found." *Id.* Texas courts have since answered that question. Mental anguish compensation "is recoverable as an element of actual damage when the plaintiff establishes an intentional tort," including a trespass to property. *Teledyne*, 694 S.W.2d at 111. Texas courts of appeal have recognized

the same principle. *See Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 756 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (reasoning that "intentional injury to property will support a claim of mental anguish where simple negligence will not."). Courts applying that rule have sustained such awards: $175,000 for an intentional nuisance that invaded the use and enjoyment of a home, *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 921–23 (N.D. Tex. 2020), and $150,000 for an intentional trespass, *Kelly Custom Homes, LLC v. Hopper*, No. 14-23-00793-CV, 2024 WL 3765393, at *6 (Tex. App.—Houston [14th Dist.] Aug. 13, 2024, no pet.). The rule SpaceX invokes is only half the doctrine. The other half decides this case.

Plaintiffs' allegations fall on the intentional side of that line. The First Amended Complaint does not allege that SpaceX carelessly stumbled into harm. It alleges that SpaceX "physically, intentionally, deliberately, and voluntarily" drove rocket-generated acoustic energy into Plaintiffs' properties. (Dkt. 23, ¶271). It alleges that SpaceX did so aware that its launches were causing that very intrusion and choosing to continue regardless. (*Id.* at ¶¶ 95–97, 272). Nor is the anguish Plaintiffs allege mere sorrow over a diminished asset. It is the distress of "severe and repeated acoustic trauma," structure-shaking noise and sonic booms, endured in the place they live. (*Id.* at ¶¶ 268, 275). That is the very injury for which the *Reed* court, applying Texas law, awarded $175,000: "psychological harm to [the] 'peace of mind' in the use and enjoyment of [the] property." *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 921–22 (N.D. Tex. 2020). The question

is therefore not whether Texas law ever permits these damages (it does), but whether Plaintiffs have plausibly alleged the intentional conduct that unlocks them. They have.

**B. Intent Does Not Require Animus. Substantial Certainty Suffices.**

SpaceX's central argument is that Plaintiffs allege no "ill-will, animus, or design to harm" them personally. (Dkt. 29 at 6). But that demands a showing Texas law does not require. Under Texas law, a defendant acts intentionally not only when it desires harm but also when it "believes that the consequences are substantially certain to result from" its conduct. *Crosstex*, 505 S.W.3d at 605 (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). Intent may be shown by a "specific intent to inflict injury," by a "malicious desire to so harm," or—decisive here—by the defendant's "belief that the interference was 'substantially certain to result from' the defendant's conduct." *Id.* (quoting *Reed Tool*, 689 S.W.2d at 406 & PROSSER AND KEETON § 87, at 624). "[A]n intent to inflict injury or desire to do harm is not required." *Id.* The standard is subjective, and it attaches to the interference itself: a defendant who knows its conduct is substantially certain to invade the plaintiff's land acts intentionally, even in "the pursuit of a laudable enterprise without any desire to cause harm." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 825 cmt. c). Animus is one road to intent. It is not the only one, and not the road Plaintiffs must travel.

Measured against that standard, the First Amended Complaint pleads intent many times over. SpaceX did not merely know, in the abstract, that rockets are loud. It

appraised and offered to buy houses in the neighborhoods near Starbase in 2019 because it "knew its Starship launches were going to cause property damage." (Dkt. 23, ¶95). It purchased insurance against the very damage it expected. (*Id.* at ¶96). It watched its inaugural launch carve a crater and rain debris for miles, grounding the program for months. (*Id.* at ¶70). And when independent measurements and its own data confirmed that each launch was driving noise and overpressure past the damage thresholds into Plaintiffs' communities, SpaceX kept launching—eleven times—while stripping the adverse numbers from its public filings. (*Id.* at ¶¶ 76, 85, 93). Those allegations, taken as true, establish far more than a "sheer possibility" that SpaceX believed its acoustic intrusions were substantially certain to reach Plaintiffs' homes. *Iqbal*, 556 U.S. at 678. They make it not merely a plausible inference, but the more natural one. That is intent under Texas law, and it is all Rule 12(b)(6) requires.

**C. Plaintiffs Plead a Deliberate and Willful Trespass, and SpaceX's Summary-Judgment Cases Do Not Control at the Pleadings Stage.**

SpaceX's strongest argument fails on its own terms. SpaceX invokes *Coinmach* for the rule that mental-anguish damages for trespass require "a showing of deliberate and willful trespass and actual property damage." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 922 (Tex. 2013). Plaintiffs accept and satisfy that standard. *Coinmach* distinguishes the innocent, good-faith trespasser, liable only for rent and repair, from one who trespasses "knowingly and intentionally" or "maliciously" and who therefore "may be liable for additional forms of damages," including mental

anguish. *Id.* The First Amended Complaint places SpaceX in the second category. It alleges that SpaceX, "aware of the likelihood" that its rocket-generated energy would enter Plaintiffs' properties, "intentionally and willfully opted to proceed" repeatedly, across at least eleven launches, after appraising and buying out neighbors and insuring against the very harm. (Dkt. 23, ¶¶ 95–97, 271–72). SpaceX's rejoinder is that, although Plaintiffs might satisfy the intent to enter element, they cannot satisfy the deliberateness and willfulness necessary to support mental-anguish damages. (Dkt. 29 at 22). However, Plaintiffs have pleaded both the liability element of trespass and the separate, heightened showing that governs mental-anguish damages. *See Lakeside Village Homeowners Ass'n v. Belanger*, 545 S.W.3d 15, 36–37 (Tex. App.—El Paso 2017, pet. denied) (stating "actual damages resulting from mental distress may be recovered, as a separate and independent element, when caused by a deliberate and willful trespass in which actual damage to plaintiff's property is sustained") (citation omitted).

SpaceX leans hardest on *Cox v. Helena Chemical*, but *Cox* is a summary-judgment case, and its posture makes all the difference. The *Cox* plaintiffs lost on combined traditional and no-evidence motions, after discovery, because they "failed to present any evidence" that the defendant "willfully and deliberately caused" herbicide to drift onto their land. *Cox v. Helena Chem. Co.*, 630 S.W.3d 234, 249 (Tex. App.—Eastland 2020), *aff'd in part, rev'd in part sub nom. Helena Chem. Co. v. Cox*, 664 S.W.3d 66 (Tex. 2023). Awareness of a generalized risk, coupled with proceeding, was not enough as a matter of proof. *Id.* That

is an evidentiary ruling, not a pleading standard. Plaintiffs here need not prove anything yet; on a Rule 12(b)(6) motion they need only allege facts supporting a plausible inference of deliberate, willful conduct, and they have. Nor does *Cox* carry the weight SpaceX assigns it. On review, the Texas Supreme Court reversed on causation and rendered a take-nothing judgment; it had no occasion to address the deliberate-and-willful trespass standard, because the plaintiffs did not challenge the court of appeals' separate ruling on mental anguish. *Helena Chem.*, 664 S.W.3d at 72, 82. *Cox* governs what plaintiffs must prove on a developed record. It says nothing about what Plaintiffs must plead.

**D. At a Minimum, Whether SpaceX Acted with Ill-Will Is a Fact Question That Cannot Be Resolved on the Pleadings.**

Plaintiffs need not reach the gross-negligence route; the intentional-tort analysis above resolves the motion. But even on that route, which SpaceX presses, dismissal is improper. Texas permits mental-anguish damages for grossly negligent property damage where there is "some ill-will, animus, or desire to harm the plaintiff personally." *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 562 (Tex. App.—Austin 2004, no pet.); *see also Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (originating the standard). SpaceX says that element is missing, but it reaches that conclusion only by doing exactly what Rule 12(b)(6) forbids: drawing inferences in its own favor. Unlike the defendants in *Seminole* and *Petco*, whose conduct bore no particular relationship to the plaintiff, SpaceX singled out the communities surrounding Starbase: it appraised many of these homes, offered to buy

them, and—when residents remained—launched anyway, repeatedly, knowing its acoustic energy was invading their properties. (Dkt. 23, ¶¶ 95–97). Whether that course of conduct reflects the requisite ill-will is, at the least, a question that cannot be resolved against Plaintiffs on the pleadings. SpaceX's contrary reading of its buyout offers and insurance may be argued to a jury. It cannot be assumed on a motion to dismiss.

**E. SpaceX's Request for Judicial Notice Cannot Resolve Disputed Facts on a Motion to Dismiss.**

SpaceX's Request for Judicial Notice asks the Court to do something Rule 12 also does not permit. A court may take judicial notice of a public record's existence, but it "may only take notice of the undisputed facts therein," *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664–65 (N.D. Tex. 2011), and must do so "sparingly at the pleadings stage," *id.* at 664 (quoting *Reneker v. Offill*, No. 3:08–cv–1394–D, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.)). Judicial notice cannot be used to resolve disputed facts or to draw inferences against the non-moving party. At the pleadings stage the court "accepts the [plaintiffs'] allegations as true, as well as all reasonable inferences therefrom," and "will not examine" noticed materials "in an attempt to test the reasonableness of the inferences" the complaint draws. *Id.* at 665–66. SpaceX asks for the opposite. Its exhibits are offered not for context but to establish a fact—that Plaintiffs live too far from the launch site to have been targeted—and to draw that inference in SpaceX's favor. Rule 12 forbids this inference.

Neither exhibit changes that. Exhibit 1 is a news article reporting the incorporation of

the City of Starbase. A court may notice that the article exists, but such articles are noticeable only to show that a matter is publicly known, "not for the truth of the article's other assertions." *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016). Exhibit 2 is a map prepared by SpaceX's counsel, plotting Plaintiffs' homes and their distances from the launch pad. Even authentic, government-issued maps may be noticed for location alone; a court "cannot make inferences in [the movant's] favor" from them. *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 699 F. Supp. 3d 1086, 1105 (D. Or. 2023). A party-created, annotated demonstrative fares worse: because a court "cannot assume the accuracy of the information contained in the map," it may decline to notice the exhibit at all. *Id.* at 1102. Whichever way the Court treats them, the inference SpaceX seeks—that distance disproves targeting or harm—is contested; it collides with Plaintiffs' well-pleaded, independently measured allegation that these launches drove damaging acoustic energy into these very communities, miles away. And proper judicial notice does not convert a Rule 12(b)(6) motion into one for summary judgment. See *Funk v. Stryker Corp.*, 631 F.3d 777, 782–83 (5th Cir. 2011). SpaceX may make its distance argument on a developed record. It cannot make it now.

**F. Any Dismissal Should Be Without Prejudice and With Leave to Amend.**

Finally, any dismissal should be without prejudice. Rule 15(a)(2) directs courts to "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371

U.S. 178, 182 (1962). Leave may be denied for futility, but futility means the amended pleading "would fail to state a claim upon which relief could be granted." *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 231–32 (5th Cir. 2022) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)). SpaceX's futility argument assumes it prevails on the merits; it does not. For the reasons above, Plaintiffs have stated a claim, so further amendment is not futile. And if the Court identifies any deficiency, it is one Plaintiffs can cure with additional factual allegations: precisely the circumstance in which a party should be permitted to test its claim "on the merits." *Foman*, 371 U.S. at 182. That Plaintiffs amended once does not forfeit that opportunity; Rule 15 favors resolution on the merits over dismissal on a technicality. Plaintiffs respectfully request that any dismissal be without prejudice and with leave to replead.

## V. CONCLUSION

The Motion asks the Court to decide, on the pleadings, that SpaceX did not act intentionally. It cannot. Plaintiffs allege that SpaceX knew its launches were driving damaging noise and sonic booms into their homes and launched them anyway—at least eleven times—after appraising, offering to buy out, and insuring against the very harm. Texas law permits mental-anguish damages for intentional torts of this kind, and whether SpaceX's conduct crossed that line is a question for the factfinder, not a motion to dismiss. Plaintiffs respectfully request that the Court deny the Motion in its entirety, or grant leave to amend.

Dated: November 2, 2026

Respectfully submitted,

**MARTINEZ & TIJERINA P.L.L.C**

*/s/ Benigno Martinez*
Benigno (Trey) Martinez (D. Tex. 23945)
1201 E. Van Buren
Brownsville, Texas 78520
Telephone: (956) 550-4868
State Bar No. 00797011
trey@mbmtlawfirm.com

Richard M. Paul III (*pro hac vice* forthcoming)
Ashlea G. Schwarz (admitted *pro hac*)
Laurence O'Donnell (*pro hac vice* forthcoming)
**PAUL LLP**
601 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Laurence@PaulLLP.com

**GUERRA LLP**

*/s/ Francisco Guerra IV*
Francisco "Frank" Guerra IV (Tex. Bar No. 00796684)
Jennifer A. Neal (Tex. Bar No. 2408934)
Bailey E. VanNatta (Tex. Bar No. 24119113)
875 E. Ashby Place, Suite 1200
San Antonio, Texas 78212
Telephone: (210) 447-0500
fguerra@guerrallp.com
jneal@guerrallp.com
bvannatta@guerrallp.com

Cristobal M. Galindo (Tex. Bar No. 24026128)
**Cristobal M. Galindo, PC**
4151 Southeast Freeway #602
Houston, Texas 77027
cmg@galindolaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of November 2026, a true and correct copy of the foregoing document was filed and sent to all counsel of record by the use of the CM/ECF notice of electronic filing system.

*/s/ Francisco Guerra, IV.*
Francisco Guerra, IV.